CATHARINE HOAR, administratrix, *vs.* MAINE CENTRAL RAILROAD COMPANY.

Cumberland. Opinion June 7, 1879.

*Common Carrier. Passengers. Hand-car. Foreman of section.*

To entitle an administratrix to recover for an injury to her intestate, caused by being negligently run over by defendants' train, while he was riding between stations on a hand-car at the invitation of the foreman of a section, it must appear that the company was a common carrier of passengers by hand-cars.

No person becomes a passenger except by the consent, express or implied, of the carrier.

A foreman of a section acts without the scope of his authority by accepting a person for transportation on his hand-car.

ON REPORT.

CASE. The declaration is as follows:

"In a plea of the case, for that on the eleventh day of December, A. D. 1875, the defendants were the owners and operated a railroad known as the Maine Central Railroad, passing through the towns of Waterville and West Waterville, in the county of Kennebec, and were common carriers of passengers and persons

between said Waterville and West Waterville, and were then and there bound and required by law to carry and transport all passengers and other persons lawfully in and upon its said railroad carefully and safely, and with due regard for the preservation of their lives and limbs; and were required to employ careful, faithful and suitable persons for servants and employees, to run and manage their trains, locomotive engines and cars, and were bound to run and manage the same carefully and with due regard to the limbs of those legally in their cars.

" Yet the defendants, well knowing their duty and obligations, did, on said day last named, at said Waterville, through and by their foreman of a section, their agent and servant, Silas H. Potter, then and there employed in their business, and then and there entrusted by defendants with the care and control of one of its hand-cars, which was run on said day from said Waterville to West Waterville, upon and over said railroad, by said Potter and others, invite, request and authorize said deceased, John Hoar, then and there alive and in good health (and until a short time previous thereto having been for many years employed by defendants as section man), to ride with him, the said Potter, upon said hand-car from said Waterville to West Waterville, over and upon said railroad of defendants, which invitation and request said deceased then and there accepted, and in pursuance thereof got upon said hand-car with said Potter and one Jere Murphy, and then and there proceeded to ride from said Waterville to West Waterville over said railroad, all which was then and there well known to said defendants and to their servants, officers and agents.

"And the plaintiff avers that the defendants did then and there negligently, carelessly, wantonly, and in total disregard of law and of the safety of said Hoar and of their passengers and others lawfully traveling in and upon its cars, over and upon its road, at said Waterville, and of their lives and limbs, by other of defendants' servants and agents then and there entrusted by defendants with the control and management of a locomotive engine of the defendants, then and there propelled by steam, and attached to and drawing a paymaster's car, and those having control of said locomo-

tive engine and paymaster's car, then and there being employed by defendants in their business upon said railway, without any notice to said Hoar or to any person on said hand-car, and without the actual knowledge of said Hoar, dispatch and send with great violence and velocity on said railway, and over the same track upon which said hand-car was then and there lawfully passing, with the said Hoar and others then and there lawfully thereon, said locomotive engine being then and there attached to said paymaster's car, against and upon said hand-car upon which said Hoar was lawfully riding, and without warning or notice to said Hoar, then and there instantly (to wit : at about the hour of seven o'clock and twenty minutes A. M., on the 11th day of December, A. D. 1875,) fracturing the skull of said Hoar, and then and there inflicting upon him mortal and fatal wounds and injuries, whereof said Hoar thereafterwards, to wit : on the same day at about the hour of one o'clock P. M., after suffering great pain and torture and agony during said period of time, died.

"And the plaintiff avers that the said defendants did not employ careful, faithful and suitable persons for servants and employees to run and manage their locomotive engine, car and train, but put the same in charge of negligent, careless and heedless persons and employees, and said deceased was then and there in the exercise of due care and diligence, said injury, suffering and loss of life being the direct result of the negligence, carelessness and recklessness of defendants, and without the fault of said Hoar or of any other persons on said hand-car.

"Also for that the defendant corporation, before and at the time of committing the grievances hereinafter named, to wit : on the eleventh day of December, A. D. 1875, were the owners and operated a railroad running from Bangor to Portland, Maine, through the towns of Waterville and West Waterville, in the county of Kennebec ; that the said John Hoar, then in full life, at the special instance, request and invitation of said defendants, got upon a hand-car of said defendants to ride from said Waterville to West Waterville, over and upon the defendants' said road, and the defendants then and there so received the said Hoar, to carry him from said Waterville to West Waterville, and then and

there it became the duty of the defendants to provide safe and sufficient transportation to said Hoar, between said Waterville and West Waterville, and to employ safe, careful and suitable employees to manage their locomotive engine, car and train with care, and with due regard for the life and limb of said Hoar and others lawfully on defendants' cars and railway, and to run their locomotive engines, cars and trains in a careful and safe manner. Yet the said defendant corporation, not regarding their duty in that behalf, did not provide safe and sufficient transportation from said Waterville to West Waterville for said Hoar, and did not employ safe, careful and suitable employees to manage their locomotive engines, cars and trains with care, and with due regard for the life and limb of said Hoar and others lawfully on defendants' cars and railway, and did not then and there run their locomotive engine, car and train in a careful manner, but on the contrary, the said defendant corporation employed such careless and heedless employees and servants to manage their said locomotive engine, car and train, and did manage and control them with such recklessness and negligence, that said locomotive engine, car and train were drawn with great speed and violence upon and against the car upon which the said Hoar was lawfully riding, as aforesaid, on said eleventh day of December, A. D. 1875, at a few minutes past seven o'clock in the forenoon, and without any notice to said Hoar, then and there wounding, bruising and crushing the said Hoar, by reason of which injuries the said Hoar thereafterwards, at about one o'clock of the same day, died, during which time the said Hoar underwent great pain of body and mind; and the plaintiff avers that the injuries so received by said Hoar were in consequence of the great negligence and carelessness of the defendant corporation as aforesaid, and without the fault of the said Hoar.

"Also for that the said defendants, on the eleventh day of December, A. D. 1875, were the owners and operators of a railroad extending from Bangor to Portland, in the state of Maine, and running through the towns of Waterville and West Waterville; and were bound by law to have due regard for the life and limb of such persons as were lawfully on their railroad and in

their cars, and were required to employ careful and suitable persons to run and manage their engines, cars and trains, and the said John Hoar, deceased, was then and there at said Waterville, lawfully and properly riding in a railway vehicle provided for that purpose by the defendants, their servants and agents, over and upon said defendants' railroad between said Waterville and West Waterville, and at the request of the defendants, their servants and agents.

"Yet the said defendants, well knowing their duty and legal obligations toward said Hoar, and all persons lawfully being or riding upon its cars or other vehicles, did not provide careful and suitable persons to run and manage their cars, engines and trains, but did on said eleventh day of December, A. D. 1875, at said Waterville, wantonly, willfully, unlawfully and with gross negligence, kill and slay said John Hoar (then in full life but since deceased), by inflicting then and there upon the body of said Hoar a mortal and fatal wound with a locomotive engine of the defendants, then and there propelled by steam, upon said railroad, which locomotive engine of the defendants the defendants propelled, hurled, projected and discharged over said railroad with great velocity and violence, directly against and upon the vehicle above named, upon which the said John Hoar was lawfully riding, then and there fractured the skull of the said Hoar, and then and there inflicting frightful, excruciating and intolerable agony, anguish, distress, pain and misery upon him, so that, after enduring the same for the space of about five hours, he died on said eleventh day of December, A. D. 1875, at said Waterville, and the plaintiff avers that said Hoar came to his death then and there as aforesaid, solely by the gross negligence and culpable carelessness of the defendants, as aforesaid, and while in the exercise of due care and diligence, and without any negligence or want of care on his part."

At the first term the defendants filed a separate demurrer to each count in the declaration, which was joined, both parties reserving the right of amendment. Thereupon the parties agreed to submit the case to the law court for their determination of the sufficiency of each count.

*E. F. Webb*, for the plaintiff, in addition to the cases cited in *Blake* v. *M. C. R. R. Co.*, cited *Steamboat New World* v. *King*, 6 How. 469.    *Wilton* v. *Middlesex R. R. Co.*, 107 Mass. 108.    *Doss* v. *Wis. & Kans. & Tex. R. R. Co.*, 59 Mo. 27. *Ramsden* v. *Boston & Albany R. R. Co.*, 104 Mass. 117.

*J. H. Drummond*, for the defendants.

APPLETON, C. J.    The material and substantive allegations in the several counts in the plaintiff's writ are that the defendants are common carriers of passengers between Waterville and West Waterville; that as such carriers they are bound to carry all passengers and persons lawfully on their road carefully and safely over the same; that the plaintiff's intestate, being invited by one Potter, a foreman of a section in their employ and entrusted by them with the care and control of one of their hand-cars, to ride with him on said hand-car from Waterville to West Waterville, accepted the invitation; that the plaintiff's intestate while riding was run over by one of the defendants' engines to which a paymaster's car was attached and injured so that he died, and that this was through the negligence of the defendants and their servants, the deceased being in the exercise of due care.

To each count of the declaration the defendants filed a general demurrer.

I. The liability of a railroad company differs as to their duty to their servants and to passengers.    They are liable to servants for injuries resulting from want of due care in the selection of fellow servants, but if duly selected, they do not guaranty against their negligence.    *Blake* v. *M. C. R. R. Co.*, *ante*.    Not so as to passengers, to whom they are responsible for injuries arising from their negligence or incapacity, irrespective of the question of more or less care in their selection.    It is obvious that there is no defect in the declaration so far as it relates to the negligence of the defendants, if they are to be deemed common carriers by hand-cars.

II. The plaintiff's intestate was to be carried gratuitously. But that does not place him in a different position, so far as relates to his right to protection from neglect, from a pay passenger—if

he is to be regarded as a passenger to be carried by the defendants. *Phil. & Read. R. R. Co.* v. *Derby,* 14 How. (U. S.) 468. *Wilton* v. *Middlesex R. R. Co.,* 107 Mass. 108. Whar. Neg., § 355.

III. The plaintiff places her right to recover upon a neglect by the defendants of their duties to the intestate as common carriers. To impose upon the defendants the duties and responsibilities of common carriers, they must be shown to be such. The grave and important question, then, is whether the defendants, though common carriers of passengers along their road and in their cars for that purpose, are common carriers of passengers by their hand-cars used by their section men. Were the defendants chartered as common carriers save by their cars for passengers? Have they by their acts or conduct held out to the public, or authorized their agents to hold out to the public, that they were common carriers by their hand-cars? If they have not been chartered, and have not in any way held themselves out, as common carriers by hand-cars, then the duties and obligations resting upon them as carriers have not arisen.

If the defendants were common carriers in relation to the plaintiff's intestate, they would be bound to carry all who should apply. Were, then, the defendants bound to carry on their hand-cars any one asking to be so conveyed? Assuredly not.

In *Graham* v. *Toronto, Grey & Bruce Railway Co.,* 23 Up. Can. (C. P.) 514, the defendants agreed, with a contractor for the construction of their railway, to furnish a construction train for ballasting and laying the track for a portion of their road then under construction; the defendants to provide the conductor, engineer and fireman; the contractor furnishing the brakemen. On October 31, 1872, after work was over for the day and the train was returning to Owen Sound, where the plaintiff, one of the contractor's workmen, lived, the plaintiff, with the permission of the conductor but without the authority of the defendants, got on. Through the negligence of the person in charge of the train an accident happened, and the plaintiff was injured. "The fact," remarks Hagarty, C. J., "that the defendants' engine driver or conductor allowed him to get on the platform, does not alter my view of the case.

" I cannot distinguish it from the case of a cart sent·by its owner under his servant's care to haul bricks or lumber for a house he is building. A workman, either with the driver's assent or without any objections from him, gets upon the cart. It breaks down, or by careless driving runs against another vehicle, or a lamp post, and the workman is injured. I cannot understand by what process of reasoning the owner can in such case be held to incur any liability to the person injured. Nor, in my opinion, would the fact that the owner was aware that the driver of his cart often let a friend or person doing work at his house drive in his cart, make any difference. . . It could never be, I think, in the reasonable expectation of these defendants that they were incurring any liability as carriers of passengers, or that they should provide against contingencies that might affect them in that character."

A similar question arose in *Sheerman* v. *Toronto, Grey & Bruce Railway Co.*, 34 Up. Can. (Q. B.) 451, where one of the workmen was being carried, without reward, on a gravel train, and was injured so that he died, it was held that the deceased was not lawfully on the cars with the consent of the defendants, and a nonsuit was directed. " The workmen," observes Wilson, J., " were not lawfully on the cars. They were not passengers being carried by the defendants. They were acting on their own risk, not at the risk of the defendants, and however unfortunate the disaster may have been, it is only right the legal responsibility should fall on those who ought to bear it, and not upon those upon whom it does not rest." In this case " it appeared that it was not necessary the defendants should carry the men to and from their work, and that they never agreed to do more than to provide cars for carrying ballasting and materials for track laying."

The defendants not being common carriers, so far as relates to their liability to the plaintiff's intestate, the declaration not disclosing facts which show such liability, must be adjudged bad. *Eaton* v. *Delaware, L. & W. R. R. Co.*, 57 N. Y. 383. *Union Pacif. R. R. Co.* v. *Nichols*, 8 Kan. 505. In *Dunn* v. *Grand Trunk R. R. Co.*, 58 Maine, 187, the plaintiff was riding in a

saloon car atttached to a freight train, and paid the customary fare for conveyance in a passenger car.

IV. A master is bound by the acts of his servant in the course of his employment, but not by those obviously and utterly outside of the scope of such employment. If not common carriers, a section foreman with his hand-car has no right to impose upon the defendants the onerous responsibilities arising from that relation. He has no right to accept passengers for transportation and bind the defendants for their safe carriage, and every man may safely be presumed to know thus much.

If the risk is much greater by this mode of conveyance, the plaintiff's intestate by adopting it assumed the extra risks arising therefrom, and must be held to abide the unfortunate consequences.

No one becomes a passenger except by the consent, express or implied, of the carrier. There is no allegation of express consent by the defendants, nor of anything from which consent can be implied that the plaintiff's intestate should be carried at their risk by this unusual mode of conveyance.

*Declaration bad.*

WALTON, BARROWS, VIRGIN and LIBBEY, JJ., concurred.