GULF, COLORADO & SANTA FE RAILWAY COMPANY V.
C. F. CAMPBELL.

No. 2624.

1. **Unlawful Passenger upon Freight Train.**—Plaintiff suing for personal injuries suffered when upon a freight train, showed that he was refused passage upon the train by the conductor, but subsequently was permitted to board the train by a man with a lantern employed upon the train. *Held*, that his presence upon the freight train was not with consent of the railway company, and contributed to his injury. He could not recover for such injury, there being no evidence of gross negligence on part of the railway company.

2. **Medical Bill.**—Plaintiff suing for personal injuries, proved by a physician that his charges for the medical attention afforded plaintiff was $22.50; he charged $100, and such charge was based upon a prospective lawsuit wherein he had expected to testify as witness. *Held*, that in event of recovery by the plaintiff he could not recover for the services of the physician as witness.

APPEAL from Washington. Tried below before Hon. I. B. McFarland. The opinion states the case.

*J. W. Terry,* for appellant. — 1. If the plaintiff was not a lawful passenger on the car, but a trespasser, he was not entitled to recover, unless the employes of the defendant whose negligence caused the collision knew of the plaintiff's presence on the car, and he was injured through their gross negligence. Railway v. Richards, 59 Texas, 373; Railway v. Cocke, 64 Texas, 157.

2. As a part of his damages the plaintiff was entitled to recover the reasonable value of medical services rendered him in effecting his cure, but was not entitled to recover for the services of his physician in connection with this suit.

No brief for appellee.

HOBBY, JUDGE.—This is a suit by the appellee, Campbell, who was plaintiff below, for damages for personal injuries received in a collision between two portions of a freight train, in the city of Brenham, upon which he alleges he had taken passage for the purpose of going to Kinney.

He testified that he was in Brenham on the night of the 30th of March, 1887, and expected to return to his home at or near Kinney. He had rid-

den on freight trains on several occasions to and from Brenham and Kinney. The freight train pulled into the depot at Brenham on the way to Kinney. He asked a man standing on the platform with a lantern in his hand if he had charge of the train, who answered affirmatively, and gave him permission to get on. Plaintiff took a seat in the caboose; expected and was prepared to pay his fare. In a few moments the engineer began to back the car. Plaintiff rose from his seat and started to the door of the caboose to ascertain the cause of the backing, when the collision occurred, and he was thrown out on the ground and bruised. He did not recollect exactly how he was hurled out of the car. His coat caught onto the brake at the end of the caboose. There was testimony that some freight trains carried passengers and others did not.

Martin, the engineer who was in charge of the train, testified that after the train arrived at Brenham he cut the engine loose from the main train and attached the caboose to it, and pulled to the tank for water. While there plaintiff insisted on riding to Kinney, and got on the engine. After telling him he could not three times he got off, and he saw no more of plaintiff until he commenced backing down towards the north end of the switch, when he saw the plaintiff standing on the platform of the caboose nearest the engine; could see him distinctly, as the headlight shone directly in his face. Witness stopped the engine and caboose, waiting for orders from conductor, and while so waiting a portion of the main train of cars broke loose and ran down with considerable force, struck the caboose and drove it upon the pilot of the engine, and threw plaintiff from the platform. When witness saw the situation he reversed his engine so as to give plaintiff a chance to jump off.

The cars would not have broken loose and ran back had the brakes been set on them. It was negligence not to have them set. Plaintiff was inside of the caboose. The train was not allowed to carry passengers. There was proof that he had stated to several persons a few days after the injury, that he "got full while at Brenham; was left by the passenger train; tried to come home on a freight; was put off by the engineer; then went to the conductor, who refused to let him ride; afterwards he met a man on the platform with a lantern who told him to get on the train; he got on the rear end of the caboose, and could have jumped off, but he remained standing and got hurt."

The conductor testified that "plaintiff asked him to let him ride on the train to Kinney. He told him he could not ride on the train, as he had no authority to do so, and would not carry passengers. He gave no one permission to ride on the train. The brakeman had no authority to allow any one to ride. Both doors of the caboose were locked. Two brakemen were inside, both of whom had lanterns. There were fourteen cars in the collision. The brakeman on the north end of the cars failed to set the brakes, and this caused the collision." Plaintiff denied telling any

one that he was on the platform of the caboose at the time of the accident. It was admitted that the conductor and brakeman were discharged on account of the accident.

The jury returned a verdict for $150 actual and $350 punitory damages. No exemplary damages were claimed in the petition, and judgment was rendered for the former, the latter having been remitted. The case is before us on appeal, but there is no appearance for appellee.

The refusal of the court below to give the following charges requested is assigned as error:

"1.  If you believe from the evidence that the freight train in question was prohibited from carrying passengers, and that when plaintiff applied to the conductor for passage on said train he was informed by the conductor that he could not ride on that train, then you will find for the defendant, although you may believe that a brakeman or some other person afterward told the plaintiff to get on the train.

"2.  If you believe from the evidence that by the rules of the company passengers were forbidden to be carried on the train in question, then the presumption is that the plaintiff was an intruder and without lawful right to be there. This presumption may be rebutted by the plaintiff showing that whilst the rules forbid the transportation of passengers upon such trains, yet with knowledge of the company, and without objection on its part, they are habitually permitted to take passage on such trains. The company, through its proper officers, having the right to make these rules, may through the same officers relax or dispense with them, and the public are authorized to consider them as dispensed with when not practically enforced. The conductor can not relax these regulations without the consent of the company, because he is the agent whose special duty it is to see that they are enforced, and any relaxation of the rules on his part would be a disobedience of the orders of his superiors.

"There is no proof of gross negligence in this case, and hence if you find that as defined in the charge the plaintiff was not a lawful passenger on the car, you will find for defendant."

These instructions are in the language of our Supreme Court in the case of Prince v. Railway Co., 64 Texas, 146. The jury were instructed that if the plaintiff entered the caboose by the invitation, knowledge, and consent of the conductor, he was a lawful passenger and was entitled to all the rights, etc., of such passenger on a regular passenger train, and if he received the injuries through the carelessness and negligence of the defendant he was entitled to a verdict. But if they believed the caboose was not in the habit of carrying passengers, and plaintiff entered it without the knowledge and consent of the conductor, he was guilty of contributory negligence, and could not recover unless the company was guilty of gross negligence. We do not understand this to be the law ap-

plicable to the facts in this case. If the conductor told the plaintiff that he was not authorized or permitted to carry passengers, and still he entered the car with the knowledge and consent of the conductor, he would not, under the authority of Railway Co. v. Moore, 49 Texas, 31, and Prince v. Railway Co., *supra,* have been a lawful passenger thereon. Because from the evidence in the case he must have known the fact that the conductor possessed no authority to permit him to ride, and that it was in violation of the rules of the company if he became a passenger on the train. This is not denied by the plaintiff's evidence. It is quite plain that he knew, or certainly had reason to suppose, that the "man on the platform with a lantern in his hand" was violating the orders of the defendant, even if he was one of defendant's employes, and gave him permission to ride.

It does not appear from the plaintiff's evidence that the person giving him permission to ride in the caboose was authorized so to do. And it does appear from the evidence that the plaintiff was informed by the conductor that he could not carry passengers on that train.

A case then is presented in which the plaintiff is injured while unlawfully upon the defendant's car. And according to his evidence the injury would not have occurred but for his own negligence. We think under the rules laid down in the cases cited a charge embodying the principles contained in the instructions requested should have been given.

The fifth assignment is that "the court erred in admitting over the defendant's objection the evidence of Dr. McGregor relative to his medical bill of $100, it appearing from said evidence that his said medical bill was based upon a prospective lawsuit, and not for services actually rendered."

Witness Dr. McGregor on direct examination testified: "My bill was $100, and has not been paid. I believe the bill, under the circumstances, was a reasonable one. I have charged Campbell with it, and expect him to pay me if he can but get anything in this suit."

On cross-examination he testified: "Visited plaintiff four or five times at a distance of three miles. According to my schedule, the ordinary price for a visit to Mr. Campbell would be $3, which for five visits would amount to $15; I prescribed for him five times, charge for each prescription $1.50, which for five prescriptions would amount to $7.50, making a total of $22.50. My charge of $100 was based on a prospective lawsuit. The reason I charge more in cases of gunshot wounds, cuts, and railroad accidents is that as attending physician I always have to testify as an expert as to injuries and their possible consequences. This entails a great deal of work I would not have to do in ordinary cases."

Whereupon the defendant objected to the evidence relating to the medical bill of $100, and asked that it be excluded on the ground that the same was incompetent and inadmissible, it appearing from the witness' own testimony that his bill was based upon a prospective lawsuit, and not

for services actually rendered to the plaintiff, which request was by the court refused. The court in its charge did not exclude from the consideration of the jury so much of the bill as was based on a prospective lawsuit.

If the plaintiff was entitled to any damages under the facts of this case, a question we are not called upon to decide, he was entitled as a part thereof to recover the reasonable value of medical services rendered him in effecting a cure, but he was not entitled to recover the value of his services as a witness in the case.

For the errors mentioned, we think the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted January 20, 1890.