JOHN W. POWERS *vs.* BOSTON AND MAINE RAILROAD.

Suffolk.    November 11, 1890. — January 17, 1891.

Present: FIELD, C. J., W. ALLEN, HOLMES, & MORTON, JJ.

*Railroad — Riding on Freight Train — "Passenger" — Custom.*

A person who rides without paying any fare in the caboose of a freight train, by
the invitation or license of the conductor, cannot recover against the railroad
company for personal injuries caused by a collision with another train.

A rule of a railroad corporation, forbidding the carrying of passengers upon freight
or construction trains without a pass, does not apply only to passengers paying
fare, but applies to a former employee riding on a freight train by invitation
of the conductor.

The testimony of freight conductors on a railroad, that they had, contrary to rule,
themselves ridden on freight trains without a pass, and had permitted former
employees of the railroad company so to ride, is, in the absence of knowledge
thereof on the part of the officers of the company, insufficient to establish
a custom which will render it liable to such an employee so riding as to a
passenger.

TORT, for personal injuries received by the plaintiff while
riding upon a freight train upon the defendant's railroad.

At the trial in the Superior Court, before *Blodgett*, J., there
was evidence tending to show the following facts. The plain-
tiff had formerly been employed by the defendant as a freight
brakeman and conductor, but had left its employment in August,
1888. On December 14, 1888, he was in Northampton for the

purpose of getting work, if he could, on a freight train, of which one Porter was the conductor, on the Central Massachusetts division of the defendant's railroad. The train was to leave Northampton for Boston at forty-five minutes past three o'clock P. M. of that day, and the plaintiff entered the saloon of the caboose attached to the rear end of the train before that time. The caboose was adapted for the use of the defendant's employees riding on the train. After the train had left Northampton, Porter came into the caboose and said to the plaintiff, "Are you going to take a ride with us, Jack?" to which the plaintiff replied in the affirmative; whereupon Porter said, "That is right," and promised to try to get a job for the plaintiff as brakeman on the train. About six o'clock the caboose was run into by a construction train following the freight train, and the plaintiff received the injuries in question.

Among other rules of the defendant corporation in force at the time, and applicable to freight trains, was the following: "No freight or construction train will carry a passenger without a special pass or order from the general manager or superintendent for a certain train and day, except in case of great emergency." This rule was printed with others in a book and distributed among the freight conductors, as well as the other employees of the defendant, and was receipted for by them. The plaintiff himself testified that, while in the employment of the defendant, he had receipted for books containing the rules, but did not know that he had ever read this rule. On the issue of the existence of a custom on the part of the defendant of allowing its former employees to ride free on its freight trains, the plaintiff introduced the testimony of various freight conductors, who were or had been in the employment of the defendant, that when in charge of trains they were in the habit of giving rides to former employees of the defendant, or to any old railroad men recognized by them as such. The division superintendent testified that he knew of no such custom, and that the fact was that old employees of the road were not allowed to ride back and forth freely as they pleased.

The judge ruled that the plaintiff could not maintain the action, and ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*C. G. Fall*, ( *G. D. Burrage* with him,) for the plaintiff.

*S. Lincoln*, for the defendant.

BY THE COURT. The following opinion was prepared by Mr. Justice DEVENS, and was adopted as the opinion of the court after his death by the Justices who sat with him at the argument.

It is contended by the plaintiff that he was a passenger on the defendant's railroad, and entitled to all the rights of one. That he did not expect or intend to pay any fare as such, and that the conductor of the freight train into which he went did not demand or intend to demand fare, appears reasonably clear. This, however, would not be decisive, if he was riding where he was, when the injury happened, by the authority of the defendant, or by any inducement held out to him by the defendant's servants, either by its authority or while acting within the general scope of their authority, so that the plaintiff was entitled to treat their action as that of the defendant corporation. It was held in *Wilton* v. *Middlesex Railroad*, 107 Mass. 108, that the invitation there given by the defendant's servant to the plaintiff to ride on the horse car which the servant was driving was within the general scope of his employment, and even if it was contrary to the instructions of the driver, she was not a trespasser. In the case at bar, the plaintiff was not on a passenger train, and he was riding in the caboose of a freight train, in a place which he could not have failed to know was not intended or adapted for the use of passengers, but solely for the accommodation of the defendant's employees engaged in managing the train. Even if, therefore, the plaintiff had an invitation from the conductor of the freight train, he could not have supposed that the conductor was acting within the general scope of his employment, or that, independently of any rules of the corporation, the conductor had any authority to extend such an invitation. The ordinary business of conducting and managing a freight train does not involve any right to invite persons to ride upon such trains, or to accept them as passengers.

In *Files* v. *Boston & Albany Railroad*, 149 Mass. 204, it was held that a person who attempted to get into a cab of a locomotive engine attached to a freight train, on a railroad used exclusively for the transportation of freight, to ride for his own convenience, by invitation of the conductor of the train, does

not acquire the rights of a passenger, and cannot recover for personal injuries occasioned to him by the starting of the engine, even if he has previously ridden thereon by a similar invitation, and has seen others, including railroad employees, do so. In that case, as in the case at bar, it was not within the apparent scope of the conductor's authority to invite persons to ride on his freight train, nor is it important that the injury to the plaintiff there was occasioned by the attempt to get upon the locomotive, while in the case at bar it occurred while riding in a place not intended for passengers. We have assumed that an invitation was given by the conductor to the plaintiff, although it did not appear that any conversation occurred between them until the plaintiff was found in the caboose; and, assuming this, the plaintiff had no right to suppose any such invitation was given by authority of and bound the defendant. Moreover, under the circumstances, the language used could not be construed as amounting to more than a mere license at most.

There was an express rule of the corporation forbidding the carrying of passengers upon a freight or construction train, except under certain special circumstances, which did not exist in the case at bar. The plaintiff urges that this is to be construed as meaning passengers for hire, and that where no fare was to be collected this rule was not infringed. This construction of the rule is not the obvious one, but forced and unnatural, and in our view inadmissible. While the plaintiff when in the employ of the corporation had received books containing this rule, he testified that he had never read it.

The plaintiff further contends, that, apart from this rule, there was a custom on the part of the defendant to carry, or allow to be carried, upon their freight trains persons who had been in the employment of the railroad, and that thus he acquired the rights of a passenger as against it. There was evidence from some of the conductors of the road, that they had themselves ridden and had permitted old employees to ride on several occasions upon the freight trains, and also that the plaintiff had so ridden, and this notwithstanding the rule of the corporation. But in order that the corporation should be made responsible by reason of such a custom, it was necessary to show that it was actually known to the officials who conducted its business, or

that it was so general and of such long continuance that it must be fairly inferred that it was known and assented to by them. While individual acts of thus carrying old employees were shown, the evidence of the division superintendent, who was the only official called who was connected with the general management of the road, showed that no such custom was known to him, and the whole testimony failed to establish a usage so general, uniform, and long continued that it could be permitted to override a rule which was brought to the attention of each conductor by the book of instructions which was given him.

The plaintiff urges, that, if not a passenger, he was at least upon the evidence a licensee. It may be questioned whether the conductor had any more right to invest him with the rights of a licensee than with those of a passenger. At all events, if the plaintiff was on the defendant's train simply by the license of the conductor, he was there under such circumstances that the defendant was not responsible to him for any injury which occurred to him in consequence of the collision. *Eaton* v. *Delaware, Lackawanna, & Western Railroad,* 57 N. Y. 382. *Flower* v. *Pennsylvania Railroad,* 69 Penn. St. 210.

*Exceptions overruled.*