## BRYANT v. CHICAGO, ST. P., M. & O. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. February 6, 1893.)

### No. 175.

CARRIERS OF PASSENGERS—WHO ARE PASSENGERS.

The engineer of a railroad switch engine, while under pay for extra hours' labor, went, under the direction of the yard master, to the company's shops, a distance of about two miles, being entirely within the company's yards, and drew a passenger coach full of the company's employes to the depot, where they attended a meeting. After the meeting was over, about 10 o'clock at night, the employes again got into the coach, the yard master acting as conductor, and started on the return trip. A collision shortly ensued, in which plaintiff's intestate received injuries causing his death. The intestate had come in from the shops on the coach, but there was no evidence that he or any of the others paid fare. *Held,* that in view of the presumption that one riding in a passenger coach is lawfully there, by invitation or permission of the carrier's employes, and that these employes have authority to bind the carrier by such invitation or permission, there was some evidence that the relation of passenger and carrier existed; and it was error to direct a verdict for defendant on the ground that there was no evidence of such relation.

In Error to the Circuit Court of the United States for the District of Minnesota.

Action by Forrest E. Bryant, administrator of the estate of James Davidson, deceased, against the Chicago, St. Paul, Minneapolis & Omaha Railway Company, to recover damages for alleged negligence causing the death of said Davidson. A verdict was directed for defendant, and, from the judgment entered thereon, plaintiff brings error. Reversed.

Statement by Sanborn, Circuit Judge:

The plaintiff in error brought an action for damages for the negligence of the defendant in error, causing the death of James Davidson. The complaint alleged that the defendant was a common carrier between the Union Depot, in St. Paul, and a point near its railroad shops, about a mile and a half westerly from the depot, and that while in the course of his transportation by the defendant, as a passenger between these points, the deceased was killed by its negligence. The answer admitted that the defendant was a common carrier, but denied that at the time of the accident it was a carrier of passengers between the points named, and denied that the deceased was a passenger at that time on any car operated by it. There was evidence that the accident was caused by the negligence of the defendant's employes in the management of certain freight cars that stood on its passenger track, with which the train on which the deceased was riding collided. At the close of the plaintiff's evidence the court instructed the jury to return a verdict for the defendant, on the ground that there was no evidence tending to show that the relation of passenger and carrier existed between the deceased and the defendant at the time of the accident, and it is this instruction of which complaint is now made. The evidence discloses the following facts: Defendant's

railroad yard extended from the Union Depot in St. Paul westerly about two miles to its shops, and the two points between which the complaint alleges the deceased was being carried at the time of the accident are within this yard. One Flannagan, who was killed in the accident, was the defendant's general yard master. His duties, as such, were to instruct the switchmen what to do, to receive orders from the shipping agents, and to tell the foremen of the crews what they should do. He acted as conductor upon, and had charge of, the train on which the accident occurred, and it occurred within the limits of the yard. The train consisted of a switch engine and one passenger coach, which belonged to the defendant. The engine was operated by one of its engineers,—who was paid by it, for extra hours, for running this train on the evening of the accident,—and by one of defendant's firemen, under Flannagan's orders. On the evening of the accident this engineer, by the direction of Flannagan, went to the shops of the company, and, with the switch engine, drew the passenger coach, filled with employes of the defendant, from the shops to the Union Depot, where they held a meeting. The deceased rode from a point near the shops to the depot in this coach. After the meeting, and at about 10 o'clock in the evening, this coach stood opposite the platform at the depot on the out-going, west-bound track of the defendant, in front of this switch engine. Many persons who came to the depot in the car boarded it, and among others the deceased. Some were invited to do so by Flannagan, but there was no evidence that the deceased received any special invitation to ride upon it. He seated himself in the coach. Flannagan stood on the step, at its forward end, and signalled the engineer to push the train out towards the shops. He did so, and after stopping at an intermediate station, and starting again, in obedience to Flannagan's signals, the train collided with the freight cars on the track, and so injured the plaintiff's intestate that he died. There was no evidence that the deceased, or any other person in this coach, paid any fare.

M. D. Munn and F. B. Kellogg, (Munn, Boyeson & Thygeson, C. K. Davis, and C. A. Severance, on the brief,) for plaintiff in error.

Thomas Wilson, (S. L. Perrin, on the brief,) for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and SHIRAS, District Judge.

SANBORN, Circuit Judge, (after stating the facts.) If the defendant undertook to carry the deceased without the payment of fare, it was bound to the exercise of due care in performing the obligation it voluntarily assumed. Railway Co. v. Derby, 14 How. 468; The New World v. King, 16 How. 469; Waterbury v. Railroad Co., 17 Fed. Rep. 671, 673.

Whatever the rule may be when one is riding for his own convenience on a freight train, an engine, a hand car, or any other carriage of a common carrier that is evidently not designed for the transportation of passengers, (Powers v. Railroad Co., 153 Mass. 188, 190, 26 N. E. Rep. 446; Eaton v. Railroad Co., 57 N. Y. 382; Files v. Railroad Co., 149 Mass. 204, 21 N. E. Rep. 311; Hoar v. Railroad Co., 70 Me. 65, 72, 73; Gardner v. Railroad Co., 51 Conn. 143; Graham v. Railway Co., 23 U. C. C. P. 541; Sheerman v. Railway Co., 34 U. C. Q. B. 451; Railroad Co. v. Michie, 83 Ill. 427,) the presumption is that one riding in a passenger coach, an omnibus, or any other carriage of a common carrier, that is palpably designed for the transportation of passengers, is lawfully there, by invitation or permission of the employes of the carrier in charge of the vehicle, and that these employes have authority to bind the carrier by such

invitation or permission. Railway Co. v. Books, 57 Pa. St. 339, 346; Railroad Co. v. Derby, supra; The New World v. King, supra; Railway Co. v. Thompson, 8 N. E. Rep. 18, 9 N. E. Rep. 357; Hutch. Carr. § 334. The reason of the rule is that the carrier offers its passenger trains and coaches for the transportation of persons, and in their operation confides to its servants in charge of them the business of inviting and accepting persons thereon as passengers. Whenever one enters a passenger coach on such an invitation, or under such a permission, and the transportation commences, a contract between the passenger and carrier is implied. The carrier, by holding out its passenger train or coach for the carriage of passengers, offers to carry them with due care; and the passenger, by entering the coach, and allowing himself to be transported, accepts the offer, and impliedly agrees to pay his fare, and thus the contract becomes complete. The presumptions referred to are not conclusive. Proper evidence or countervailing circumstances may rebut them. But, in the absence of these, they are wise and salutary, and should have proper consideration. They are but the application of the established rules of agency to the business of the common carrier. That the servant of a carrier, in charge of a passenger coach and engine which are carrying persons over its railroad, should be presumed to have the authority from the carrier to accept such persons as passengers, is but the application of the familiar rule that the master is bound by the acts of the servant, within the scope of the usual business confided to him, because the master is presumed to authorize and approve the known acts that are incident to such an employment. Story, Ag. (9th Ed.) § 56.

In view of this presumption, and the further presumption that the deceased was lawfully riding, which arises from the fact that he was riding over defendant's railroad, through its yard, in one of its passenger coaches, which had brought him and others to the depot a few hours before, drawn by one of its engines, operated by one of its engineers, and conducted by its general yard master, we are of the opinion that there was some evidence in this case tending to show that the relation of carrier and passenger existed between the defendant and the deceased, and that the question whether this relation did exist should have been submitted to the jury. The judgment is accordingly reversed, and the cause remanded for further proceedings not inconsistent with this opinion.