## PURPLE v. UNION PAC. R. CO.

(Circuit Court of Appeals, Eighth Circuit. March 10. 1902.)

No. 1,591.

1. CARRIERS—ONE ENTERING TRAIN WITH UNDERSTANDING WITH CONDUCTOR NOT TO PAY FARE A TRESPASSER—DUTY OF CARRIER.

One who, knowing that a conductor has no authority to grant free transportation, enters and rides upon his train with the deliberate intention not to pay his fare, under an agreement or under a tacit understanding with the conductor that he shall ride free, commits a fraud upon the railroad company, and is not a passenger, but is a mere trespasser, to whom the only duty of the company is to abstain from willful or reckless injury.

2. SAME.

One who enters and rides upon a car or train which he knows, or by the exercise of reasonable diligence would know, is prohibited from carrying passengers, is a trespasser, and not a passenger, and the only duty of the railroad company toward him is to abstain from wanton or reckless injury to him.

3. SAME—ALLEGED PASSENGER ON FREIGHT TRAIN PRESUMPTIVELY A TRESPASSER.

In the absence of any rule or practice permitting freight trains to carry passengers, the presumption is that one riding for his own convenience on a freight train, an engine, a hand car, or any other carriage of a common carrier not designed for the transportation of passengers, is unlawfully there, and is a trespasser.

4. SAME—FREIGHT TRAINS—PASSENGER—KNOWLEDGE OF FACTS SUGGESTING INQUIRY.

One about to board a train who has knowledge of facts which would put a person of ordinary prudence and diligence upon inquiry to ascertain whether or not the train is permitted to carry passengers is charged with a knowledge of all the facts which a reasonably diligent inquiry would discover.

5. NEGLIGENCE—NO SUCH DEGREE AS "GROSS."

It is not error to refuse to instruct the jury that a defendant is guilty of gross negligence as distinguished from ordinary negligence on the one hand, and willful or reckless negligence on the other, because there is no such legal degree of negligence as "gross" negligence. The word "gross" in this connection is a mere epithet used to characterize one of the two legal classes of negligence mentioned.

6. Bill of Exceptions — Statements in, Conclusive unless Excepted to When Bill is Settled.

The statement of facts in a bill of exceptions is conclusive in an appellate court unless it is excepted to and the exceptions are recorded in the bill when it is settled.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Kansas.

On the 9th of January, 1900, Cassandra Purple, who is the widow of Harry G. Purple, brought an action against the Union Pacific Railroad Company for negligence causing his death. She alleged that on October 16, 1899, between Laramie and Cheyenne, in the state of Wyoming, he was a passenger upon a train of the railroad company, and was killed through the negligence of the latter by another train which ran into the rear of that upon which Purple was riding. The railroad company denied these allegations, and averred that Purple was riding upon an extra freight train, which was prohibited from carrying passengers, that he knew that this train was not authorized to carry passengers, and that he was riding without pass or other free transportation, with the intention of paying no fare. The issues presented by these pleadings were submitted to a jury, which returned a verdict for the defendant, and a writ of error has been sued out to reverse the judgment founded upon this verdict. The case is presented upon a bill of exceptions which contains but a portion of the evidence. It discloses these facts: The train upon which Purple was riding was an extra freight train running east from Laramie to Cheyenne. It was prohibited from carrying passengers by the rules of the company, but those rules permitted regular freight trains to take passengers. At Sherman, on its way from Laramie to Cheyenne, it became a section of passenger train No. 6. The sectionizing of a train is the act of the train dispatcher. It is an act of temporary application, and may be discontinued at any suitable point. Its sole purpose is to give certain track rights that a train does not possess before the order is issued. The order at Sherman which made this train a section of regular passenger No. 6 directed a freight train ahead of this one, this train, regular passenger No. 6, another passenger train, and another freight train to run as sections 1, 2, 3, 4, and 5 of the regular passenger No. 6. These sections were running in this way when the accident occurred. The evidence of the defendant tended to show that an extra freight train did not lose its distinctive character as such by being made a section of a passenger train, but that it still remained an extra freight train. One of the rules of the company was that, where "freight trains on which passengers are allowed to be carried are run in sections, the last section of the train only" will be permitted to carry passengers, and another was that "conductors will ·collect fare from all persons traveling without a ticket or pass, and will be allowed no discretion in the matter."

Harry G. Purple was an employé on the Union Pacific Railroad from 1884 until 1893, and a part of the time was a conductor. The rules for the operation of this road in force at the time of his death were the same as those in force when he was employed upon the road, and at that time he was thoroughly familiar with them. The train upon which Purple rode left Laramie at 8.15 p. m. on October 15, 1899. Its conductor was an old friend and acquaintance of Purple. The train consisted of 27 or 28 freight cars and a caboose. Purple had been visiting at Laramie for two or three days, and he had in his pocket on this day a time card which disclosed the fact that this train which he boarded was not a regular freight train, and therefore was not entitled to carry passengers. He was in the train dispatcher's office before the departure of the train, and that dispatcher could have informed him that this was not a regular freight train. The evidence of the defendant tended to prove that he had no intention of paying his fare, and that there was a tacit understanding between him and Davis, the conductor of the freight train, that he was to be permitted to ride on this train from Laramie to Cheyenne without the payment of any fare. He did not

pay or offer to pay fare, nor did the conductor or any one else ask him to do so.

The bill of exceptions contains a statement that all evidence tending to show the fact or character of the defendant's negligence is found in it, and that there was no evidence in the case tending to show wanton, willful, or reckless disregard on the part of the company of the safety of the deceased. These are the principal facts disclosed by the record which condition the determination of the questions presented by the alleged errors specified in this case, which all relate to the charge of the court and to its refusal to give certain requested instructions.

L. W. Keplinger (C. F. Hutchings, on the brief), for plaintiff in error.

N. H. Loomis (A. L. Williams and R. W. Blair, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The court refused to instruct the jury that the deceased was a passenger on the freight train of the defendant at the time he was injured, and that if he was killed by the negligence of the company the plaintiff was entitled to recover. This ruling is the first and the chief complaint of counsel for the plaintiff in error. There are, however, two reasons why this specification of error cannot be sustained.

In the first place, Purple had no pass, ticket, or permit to ride free upon this train, he paid no fare, and there was evidence tending to prove that he did not intend to pay fare, and that there was a tacit understanding between him and the conductor, Davis, that he should ride free. He was a man of years, intelligence, and experience. He had been employed upon this railroad for about nine years. He knew that he had no right to ride, and that the conductor of this train had no authority to permit him to ride without the payment of his fare. The rules governing the operation of this railroad during the nine years when he was employed upon it prohibited this course of action, and they forbade it when he was killed. He had been familiar with these rules during the nine years of his employment upon this railroad, from 1884 to 1893, and in the seven years which followed, from 1893 to 1899, before he was injured, it is hardly possible that he could have forgotten or could have become ignorant of the specific fact that conductors were not empowered to grant free transportation upon this railroad, or of the general and universally known fact that it is not the custom to permit them to do so upon any railroad. If, knowing this fact, he entered and rode upon this train with the deliberate intention not to pay his fare, under the tacit understanding between himself and the conductor that he should not pay it, the entire transaction was a fraud upon the railroad company, and a deliberate attempt to appropriate transportation without compensation, in violation not only of the rules of the company, but also of the civil and the moral law. If he entered and continued upon this train under this under-

standing with the settled intention not to pay his fare, the relation of passenger and carrier was never created between him and the company, but he was a mere trespasser upon its property, fraudulently appropriating his ride, and the only duty which the company owed to him was to abstain from willfully or recklessly inflicting injury upon him. One who, knowing that a conductor has no authority to grant free transportation, enters and rides upon his train with the deliberate intention not to pay his fare, under an agreement or under a tacit understanding with the conductor that he shall ride free, commits a fraud upon the railroad company, and is not a passenger, but is a mere trespasser, to whom the only duty of the company is to abstain from willful or reckless injury. Condran v. Railroad Co., 67 Fed. 522, 523, 14 C. C. A. 506, 507, 508, 32 U. S. App. 182, 185, 28 L. R. A. 749; Railway Co. v. Brooks, 81 Ill. 250; Railroad Co. v. Michie, 83 Ill. 431; Railway Co. v. Beggs, 85 Ill. 84, 28 Am. Rep. 613; Railroad Co. v. Mehlsack, 131 Ill. 64, 22 N. E. 812, 19 Am. St. Rep. 17; McVeety v. Railway Co., 45 Minn. 269, 47 N. W. 809, 11 L. R. A. 174, 22 Am. St. Rep. 728; Robertson v. Railroad Co., 22 Barb. 91; Railway Co. v. Nichols, 8 Kan. 505, 12 Am. Rep. 475; Prince v. Railway Co., 64 Tex. 146; Railway Co. v. Campbell, 76 Tex. 175, 13 S. W. 19; Way v. Railway Co., 64 Iowa, 48, 19 N. W. 828, 52 Am. Rep. 431; Same v. Same, 73 Iowa, 463, 35 N. W. 525; Hendryx v. Railroad Co., 45 Kan. 377, 25 Pac. 893; Railway Co. v. Whipple, 39 Kan. 531, 18 Pac. 730; Railway Co. v. Gants, 38 Kan. 608, 17 Pac. 54, 5 Am. St. Rep. 780. A contract is indispensable to the relation of carrier and passenger. The minds of the parties must meet upon the agreement that the carrier will transport and the passenger will pay for the transportation, in the absence of a specific agreement or permission by the proper officer of the transportation company that the latter will carry the passenger without compensation. This contract of carriage may, it is true, be express or implied, but if it does not exist in either form the relation of carrier and passenger cannot have been created. An implied agreement to pay fare, and hence the relation of carrier and passenger, undoutedly arises where one enters a passenger car and rides towards his destination. But it is equally true that if one enters and rides under an express or implied agreement with a conductor, whom he knows or has reasonable cause to believe has no authority to make such a contract, that he shall not pay his fare, but shall cheat the company out of the transportation, no contract of carriage is created, but the existence of such an agreement is conclusively negatived by the actual fraudulent contract so that it cannot exist. Therefore, if the deceased entered and rode under the fraudulent understanding with the conductor that he should pay no fare and with the deliberate intention to pay none, there was neither an express nor an implied agreement that he should pay for his transportation, and no relation of carrier and passenger arose, because the minds of Purple and the conductor never met upon any such contract, but came together upon the contrary understanding that Purple should pay no fare and should not be a passenger, but should fraudulently ap-

propriate his transportation. The bill of exceptions instructs us that there was evidence tending to establish this state of facts, and in the presence of it the court properly refused to instruct the jury that Purple was a passenger, and that the plaintiff was entitled to recover if he was killed by the negligence of the defendant, because if this state of facts existed he was not a passenger, and the limit of the duty of the defendant toward him was to refrain from willful and reckless injury to him.

In the second place, Purple was riding on a train which was prohibited from carrying passengers by the rules of the company, and there was evidence tending to prove that he either knew this fact, or had notice of such facts as would have led a person of ordinary prudence and diligence to an inquiry which would have disclosed its existence. The record is clear that at the time Purple boarded the train on which he rode to his death that train was an extra freight train, which was forbidden to take or carry passengers. After he started upon his ride and at Sherman it was made the second section of regular passenger train No. 6 by the orders of the train dispatcher, but the character of the train and the number of the cars remained unchanged. It still contained the 27 or 28 freight cars and caboose with which it started from Laramie, and it contained no passenger cars. The orders of the dispatcher made this the second of five sections running on the time of regular passenger train No. 6. The first section which preceded it was a freight train, the two sections which followed it were passenger trains, and the fifth or last section was a freight train. Thus, this passenger train No. 6 consisted of five sections, the first, second, and fifth of which were composed exclusively of freight cars and cabooses, and were in fact freight trains.

It will be convenient to notice here the earnest argument of counsel for the plaintiff presented in the discussion of another specification of error to establish the proposition that, if the extra freight train on which Purple was riding was prohibited from carrying passengers before it reached Sherman, it was permitted to do so after it passed that point, so that at the time Purple was killed it was not under this ban. Stated in syllogistic form, this is the contention: The rules permitted regular freight trains to carry passengers and forbade extra freight trains to do so. They declared that regular freight trains were those running on schedule time, while extra freight trains were those which did not run upon such time. Prior to its arrival at Sherman the train on which Purple rode was not running on the schedule time of any train. After it passed Sherman it ran on the schedule time of regular passenger train No. 6. It therefore became from that time a regular train, because it was running on the schedule time of the regular passenger train, and hence it became authorized to carry passengers before the fatal injury was inflicted. This argument is not persuasive or convincing, because the composition, character, and function of the train on which Purple rode remained the same after it became a section of the passenger train that it was before that time, and because after it passed Sherman it was not running on any schedule time prescribed for it upon the time card, but upon the time of a passenger train, under the special and temporary orders of

the train dispatcher. It is, however, unnecessary to discuss this question, because the right of the conductor of this train to carry passengers upon it after it passed Sherman is conclusively negatived by another admitted rule of the company. That rule is that, where freight trains on which passengers are allowed to be carried are run in sections, the last section of the train only will be permitted to carry the passengers. If, therefore, this became a regular freight train authorized to carry passengers when it passed Sherman, it was only the fifth section of this freight train which was permitted to do so, while the conductor of the second section, on which Purple was riding, was expressly prohibited from exercising this privilege. The train upon which Purple rode, therefore, was when he boarded it, and continued to be until the fatal collision, a train which was forbidden by the rules of the company to accept or carry him as a passenger.

Purple had worked on this railroad for nine years from 1884 to 1893. During a part of this time he had been a conductor upon the railroad. The rules for the operation of the railroad were the same in 1899, when he was injured, that they were in 1893, when he left his employment. At and before that time he was familiar with them. It is difficult to believe that in 1899 he could have forgotten that these rules permitted some freight trains to carry passengers and prohibited others from doing so. For a day or two before he started on his fatal ride he had been visiting at Laramie, where he boarded the train. On the day upon which he started he had been in the office of the train dispatcher, where he could have readily learned by a simple inquiry whether or not the train upon which he entered was permitted to carry passengers. Beyond all question, these facts charged Purple with notice sufficient to put any man of ordinary prudence and diligence upon inquiry for the answer to the question whether or not this train was authorized to carry passengers, and brought him far within the established rule that notice sufficient to put one on inquiry for a fact is notice of all the facts relative to the matter in question that a reasonably diligent investigation and inquiry will disclose. In this state of the evidence the court below rightly charged the jury: "It was the duty of the deceased to inquire whether this train was such as was authorized to carry passengers. It does not appear that he did so; consequently he was charged with such knowledge and information as reasonable inquiry would have elicited." No exception was taken to this portion of the instructions of the court, and it comes here the established law of this case. If, therefore, Purple knew, or by a reasonably diligent inquiry he could have learned, that the train which he boarded was not permitted to carry passengers, he was not a passenger upon it, but was a mere trespasser on that train, because in the eyes of the law he was there knowingly violating the rules of the company. There was evidence tending to show this state of facts, and in the presence of it the court could not have lawfully instructed the jury that Purple was a passenger, and that the defendant was liable for his death if it was caused by its negligence, because, if this state of facts existed, Purple was a trespasser, and not a passenger, and the only duty of the defendant to him was to abstain from wantonly or recklessly inflicting injury upon him. One who enters and rides

upon a car or train which he knows, or by the exercise of reasonable diligence would know, is prohibited from carrying passengers, is a trespasser, and not a passenger, and the only duty of the railroad company toward him is to abstain from wanton or reckless injury to him. Railway Co. v. Roach (Va.) 5 S. E. 175; Robertson v. Railroad Co., 22 Barb. 91; Eaton v. Railroad Co., 57 N. Y. 382, 384, 15 Am. Rep. 513; Pennsylvania R. Co. v. Langdon, 1 Am. & Eng. R. Cas. 87; Powers v. Railroad Co., 153 Mass. 188, 191, 192, 26 N. E. 446; Flower v. Railroad Co., 69 Pa. 210, 8 Am. Rep. 251; Ecliff v. Railway Co., 64 Mich. 196, 31 N. W. 180.

The conclusions which have now been announced have not been reached without a careful perusal and consideration of the authorities cited by counsel for the plaintiff in error, such as Dunn v. Railway Co., 58 Me. 187, 4 Am. Rep. 267; Lucas v. Railway Co., 33 Wis. 41, 54, 14 Am. Rep. 735; Railroad Co. v. Derby, 14 How. 468, 484, 14 L. Ed. 502; Gradin v. Railroad Co., 30 Minn. 217, 220, 14 N. W. 881; Railroad Co. v. Wheeler, 35 Kan. 185, 10 Pac. 461; and Whitehead v. Railway Co., 99 Mo. 263, 11 S. W. 751, 6 L. R. A. 409,—in which boys and men who had never been employed upon the railroad, or who had no notice of facts sufficient to put them upon inquiry as to the power of the conductor or officer in charge of the train to permit them to ride upon it as passengers, were held, under the circumstances of these particular cases, to stand in this relation to the companies. The rules and principles announced in those cases are inapplicable to the facts of the case in hand, because the evidence here conclusively establishes the fact, which did not exist in those cases, that before the alleged passenger boarded the extra freight train he knew facts which would put any man of reasonable prudence upon inquiry to ascertain—First, whether or not that train was permitted to carry passengers; and, second, whether or not the conductor had any authority to allow him to ride upon it, and because there was evidence in this case, which was not presented in any of those cases, tending to show that the alleged passenger entered and rode upon the train with the deliberate intention not to pay his fare, under a tacit understanding with the conductor that he should ride free. Purple did not approach this train in the relation to the company of a boy or of an ordinary individual honestly seeking transportation without knowledge of the rules or practices of the company. The conceded facts that he had been employed upon the railroad for nine years, had been familiar with the rules and practices upon the road and the evidence of his intention not to pay, and tacit understanding with the conductor that he should not pay fare, gave him notice of facts, and suggested inquiry which the ordinary applicant for passage upon the train of a railroad company does not have. This case is not governed by the authorities cited by the plaintiff in error, which declared the liabilities of railroad companies upon very different states of facts, but is controlled by the rules and the decisions to which reference has been made in the earlier portion of this opinion.

It will be convenient to notice here another contention of counsel for plaintiff in error allied to those which have already been considered. It is that although Purple was not a passenger he was

not a trespasser, and the court should have instructed the jury that the defendant was liable to him for gross negligence. In support of this proposition cases are cited like Railroad Co. v. Derby, 14 How. 483, 14 L. Ed. 502, where a passenger who was riding free upon the railroad by the invitation of the president of the company was carelessly injured, and Farmers' Loan & Trust Co. v. Baltimore & O. S. W. R. Co. (C. C.) 102 Fed. 17, where one riding in a passenger car upon a pass sustained injury through the negligence of the company, and it was held that the defendant was liable to these persons for the exercise of ordinary care and diligence, and that any failure to exercise such care might well be characterized as gross. These authorities, and the rules of law upon which they rest and which they announce, have no application to the case in hand. Purple was not traveling on a free pass. He was not a licensee. He was either a passenger without knowledge and without notice of facts suggesting an inquiry which would have led a prudent man to knowledge of the fact that the conductor of this train was not authorized to permit him to ride upon it as a passenger, or he was a trespasser with knowledge, or with notice charging him with knowledge, of this fact, engaged in executing a deliberate intention to ride upon the train in violation of the rules of the company. He was not a licensee, and he could occupy no middle position. There was therefore no error in the refusal of the court to charge that if he was not a passenger the railroad company was liable to him for gross negligence. The term "gross" in this connection is nothing but an epithet. It means no more than the failure to exercise ordinary diligence in the circumstances of the particular case. It distinguishes no legal degree of negligence, and it is not error to refuse to apply it to the negligence for which a defendant may be liable, because its use merely tends to create doubt and to increase confusion. Wilson v. Brett, 11 Mees. & W. 113; The New World v. King, 16 How. 474, 14 L. Ed. 1019; Milwaukee Railroad Co. v. Arms, 91 U. S. 489, 494, 23 L. Ed. 374; Beal v. Railway, 3 Hurl. & C. 337; Grill v. Collier Co. [1865–66] L. R. C. P. 600; Perkins v. Railroad Co., 24 N. Y. 196, 207, 82 Am. Dec. 281.

Another complaint of the plaintiff in error is that the court instructed the jury that there was no evidence in the case sufficient to warrant them in finding that there was any wanton, willful, or reckless disregard by the company of the safety of the deceased. But the bill of exceptions contains these two statements: "All evidence tending to show the fact or character of defendant's negligence is contained in this bill of exceptions;" and "there was no evidence in the case tending to show wanton, willful, or reckless disregard on the part of the company of the safety of the deceased." Counsel review the evidence contained in the bill of exceptions, and ask a holding that there was evidence tending to show willful and reckless injury. But this question is not here for our consideration. The only way in which it could have been presented in the present state of the record was by an exception to the statement in the bill of exceptions that there was no such evidence in the case taken

and recorded in the bill itself. No such objection or exception was taken, so that the question whether or not there was such evidence was not presented to the court below when it certified the record, and as, in an action at law, this is a court for the correction of errors exclusively, there could have been no error in the court below, because that question was not presented to or ruled upon by that court when the bill of exceptions was made. In this court the record presented by that bill, in the absence of objection or exception thereto, is conclusive.

It is assigned as error that the court refused to instruct the jury that, although the conductor did not intend to demand transportation, the fact that he had such intention could not in any way affect the right of the plaintiff to recover, in the absence of evidence to show that Purple in some way induced the conductor to form such intention. But there was evidence tending to show that Purple did induce him to form this intention by presenting himself for transportation, by forming with him the tacit understanding that he should ride free, and by entering and riding upon the train without the payment or the offer to pay fare, in pursuance of his deliberate intention and tacit understanding that he should ride without the payment of any. The instruction requested was therefore inapplicable to the facts of this case, and there was no error in its refusal. It is not the duty of a trial court to instruct the jury what the law would be in the absence of material evidence which has been presented and submitted to the jury upon the crucial issues in the case. It completely discharges its duty when it gives the law applicable to the evidence before the jury.

For the same reason there was no error in the refusal of the court to charge the jury that some of the defendant's freight trains carried passengers, that Purple was riding on one of them with the knowledge and assent of the conductor in charge, and that under these circumstances, in the absence of evidence to the contrary, it would be presumed that he was a passenger. This instruction ignored all the material evidence in the case upon which the jury based its finding that he was not a passenger, the evidence of his deliberate intention not to pay fare, of the tacit understanding that he should ride free, of his employment upon the road for nine years, and his familiarity with the rules, and of his presence and opportunity to learn the facts at Laramie before he started upon his fatal ride.

It is said that it was error for the court to refuse to charge that the payment of fare is not necessary to give rise to the liability to pay it, and that if the carrier permits the passenger to take his seat without requiring payment the obligation to pay will stand for actual payment. But the rule of law embodied in this request was fairly given to the jury in the general charge of the court. Although the evidence was conclusive that Purple never paid any fare, and never was asked to pay any, the court instructed the jury that if he was invited onto a train authorized to carry passengers, either by express words or by a tacit understanding between him and the conductor, he became a passenger, and it was the duty of the com-

pany to exercise the highest degree of practicable care for his safe transportation.

It is contended that the court erred because it failed to submit instructions (1) that if the car on which Purple was riding was of the same general appearance of other trains on which passengers were carried on that division of the railroad, but by reason of other facts, unknown to Purple, the train was not permitted to carry passengers, and if the failure of the conductor to demand fare was not procured by Purple, he was a passenger; and (2) that a person riding by the unauthorized permission of the conductor on a train not intended for the carriage of passengers is not a trespasser, unless it was known to him that the conductor exceeded his authority. It may be conceded for the purpose of this discussion, although the proposition is not considered or decided, that one without any knowledge and without any notice of facts sufficient to put him upon inquiry which would lead to knowledge of the lack of the authority of a conductor upon or of the character of a train which was not permitted to carry passengers might become a passenger upon that train under the circumstances stated in these propositions. The difficulty with the instructions is that Purple was in no such situation. He was an old employé on the road. In its practical operation he had known and had experienced the fact for nine years that regular freight trains might carry passengers and that extra freights might not. It is certainly probable that he knew this fact when he boarded the train, seven years later. Whether he did or not, the record clearly shows that he had ample knowledge of facts to put him upon an inquiry which would have led to an acquaintance with this fact. Under these circumstances, he could not escape this duty of inquiry. He was in this situation: If he had forgotten the rules and the practices, then he did not know that any freight trains on that railroad carried passengers, and the fact that he placed himself upon a freight train was notice to him that he was wrongfully there, because the presumption is that freight trains are for freight and passenger trains for passengers. In the absence of any rule or practice permitting freight trains to carry passengers, the presumption is that one riding for his own convenience on a freight train, an engine, a hand car, or any other carriage of a common carrier that is evidently not designed for the transportation of passengers, is unlawfully there and is a trespasser. Bryant v. Railroad Co., 53 Fed. 997, 998, 4 C. C. A. 146, 147, 12 U. S. App. 115, 123; Powers v. Railroad Co., 153 Mass. 188, 190, 26 N. E. 446; Eaton v. Railroad Co., 57 N. Y. 382, 15 Am. Rep. 513; Files v. Railroad Co., 149 Mass. 204, 21 N. E. 311, 14 Am. St. Rep. 411; Hoar v. Railroad Co., 70 Me. 65, 72, 73, 35 Am. Rep. 299; Gardner v. New Haven & N. Co., 51 Conn. 143, 50 Am. Rep. 12; Graham v. Railway Co., 23 U. C. C. P. 541; Sheerman v. Railway Co., 34 U. C. Q. B. 451; Railroad Co. v. Michie, 83 Ill. 427.

If, on the other hand, Purple knew the rules and the practice of the railroad company, then he knew that conductors were forbidden to carry passengers, and passengers were prohibited from riding,

on extra freight trains. So that, whether he knew the rules or not, the duty was imposed upon him to inquire and to ascertain whether or not the train upon which he entered was a regular or an extra freight train. The instructions under consideration ignore this duty of inquiry which the situation and knowledge of Purple imposed upon him, and for that reason they were properly refused. He was a trespasser, not only if he knew that the train on which he rode was not permitted to carry passengers and that the conductor was not authorized to allow him to ride upon it, but also if he knew such facts relative to this matter as would have put a man of ordinary prudence and diligence upon an inquiry which would have led to a knowledge of these facts.

The specifications of error in this case are numerous. They have not all been specifically set forth, but the rules and principles of the law and the facts, by which they must be judged, have now been carefully considered and declared. Our conclusion is that the material issues in this case were fairly and impartially tried, that the charge of the court tersely and correctly presented to the jury the rules of law applicable to the evidence, and that there was no error in the refusal of the court to submit the requested instructions of counsel for the plaintiff.

The judgment below is accordingly affirmed.