Memphis and Charleston Railroad Co. *v.* F. Chastine.

1. Supreme Court. *New trial. Exception.*

This court cannot review the action of the Circuit Court overruling a motion for a new trial, unless a formal exception to that action be taken in the court below, although the overruling of the motion was followed by a bill of exceptions embodying all the testimony. *Scott* v. *State*, 31 Miss. 473, cited.

2. Same. *For what purposes such bill of exceptions referred to.*

In such a case, however, this court may look at the testimony in order to test the correctness of exceptions taken to the giving and refusing of instructions and the admission of evidence. *Jamison* v. *Moon*, 43 Miss. 598, cited.

3. **Railroad.** *Passenger. Purchase of ticket with counterfeit money.*
A railroad company is under no obligation to transport a person who has innocently purchased his ticket with counterfeit money, and may eject such person from the train, if he refuses to rectify the wrong.

4. **Evidence.** *Relevancy. Pleading. Trespass.*
A recovery cannot be had for an act which amounts of itself to an independent trespass, though connected with the one sued for, unless it is counted on in the declaration.

5. **Same.** *Independent trespass not counted on. Case in judgment.*
A declaration in trespass on the case by a passenger against a railroad company contained two counts: first, for a failure to transport to his destination; second, for a forcible bringing back to his starting-point. The testimony was that, having purchased his ticket with a counterfeit note, the conductor, as instructed, insisted on good money, took from him a hundred dollar bill, and gave it to the conductor of the returning train, on which the passenger went back. The latter conductor carried the bill beyond the original starting-point, where the passenger, getting off, had to telegraph to recover it. *Held,* that the demand for and taking of the hundred dollars by the first conductor was perhaps part of the history of the wrongs complained of, and admissible as part of the *res gestæ;* but the carrying of it beyond the starting-point by the second conductor was not, because all the wrongs complained of ended with the arrival at that point.

Error to the Circuit Court of Alcorn County.

Hon. B. B. Boone, Judge.

This was trespass on the case by Chastine against the railroad company. The declaration contained two counts, in both of which it was alleged that the plaintiff purchased and paid for a ticket at Corinth, Mississippi, to be transported to Memphis, Tennessee, on the defendant's cars, and that he got on the train at Corinth. It was alleged, in the first count, that between Corinth and Memphis the plaintiff was forced by the conductor to get off the train, against his will, in violation of the contract; and, in the second, that he was by the conductor forced, against his will, to get on the east-bound train and go back to Corinth.

The evidence was that Chastine, whose destination was Dallas, Texas, *via* Memphis and Little Rock, procured two tickets at Corinth from J. H. Bradley, the ticket agent of the defendant, just before day, and passed, in payment, a counterfeit fifty-dollar bill. A few hours after the departure of the

train the counterfeit was detected, and Bradley sent to the conductor a telegram, stating that a man named Chastine, with a ticket to Dallas, Texas, had given him a counterfeit fifty-dollar bill, and calling upon the conductor to get from him fifty dollars good money, or have him stopped. The despatch was received by the conductor between Grand Junction and Memphis, and was at once shown by him to Chastine, without, as he states, making any threat. Chastine handed a hundred dollar bill to the conductor, who, being unable to change it, proposed to retain it until the train arrived at Memphis, where change could be obtained. Afterwards, Chastine expressed a desire to return to Corinth, as he knew the man from whom he obtained the bill, and was unable to lose the fifty dollars. When the trains met, Chastine got on the east-bound train to return to Corinth, and the conductor of the west-bound train gave the conductor of the east-bound train the hundred dollar bill to deliver to Bradley, the agent. There were two agents named Bradley, one at Corinth and the other further east at Huntsville. The conductor, supposing that the Huntsville agent was the one intended, gave Chastine a free ticket on his train to Huntsville. Chastine got off at Corinth. The conductor retained the money, and it had to be telegraphed for. When Chastine reached Corinth, it had been ascertained that the counterfeit bill, which he had paid to the ticket agent, had recently passed through the hands of a person who identified and redeemed it. Two days delay occurred, and Chastine was put to an expense of ten dollars. Then matters were explained, the mistakes rectified, Chastine got his money and another ticket, without additional charge, and went on to Memphis.

The defendant objected to the introduction of the testimony about the taking and detention of the hundred dollar bill, on the ground that it was irrelevant, and tended to prove matters not charged in the declaration. The objection was overruled, and the defendant excepted.

The following charge, among others, was given for the plaintiff : —

" 3. It is the duty of a railroad company to deliver a passenger at the end of his journey with all reasonable despatch ; and

if the jury believe from the evidence that the plaintiff had purchased from the defendant, as a common carrier of passengers, a ticket to Memphis, Tennessee, and that while on the train the conductor of said train demanded that the plaintiff should pay him fifty dollars, or be stopped, and that the plaintiff was compelled to pay as much as fifty dollars, or be stopped, they will find for the plaintiff."

To the giving of the charge the defendant objected. The objection was overruled, and the defendant excepted.

The jury returned a verdict for $2,000 against the company. The defendant moved for a new trial, on the ground, among others, that the verdict was contrary to the law and the evidence, and excessive in amount. This motion was overruled. But the defendant took no exception to the order overruling it.

A bill of exceptions was taken by the defendant, embodying all the testimony, the exceptions to its admissibility, and the exceptions to the instructions.

A judgment being entered for the $2,000, the defendant sued out this writ of error, and assigns for error the improper admission of irrelevant testimony offered by the plaintiff, erroneous charges granted for the plaintiff, and the refusal of the court to grant a new trial.

*Harris & George*, for the plaintiff in error.

1. The third instruction is not only unwarranted by any view of the testimony, but it contains the idea that the rights of a passenger who pays for his ticket with counterfeit money are the same that he would have if he purchased with honest money.

2. The testimony about the hundred dollar bill which was taken and accidentally detained should not have been introduced over the objection of the defendant. This slight delay was not the ground of action. It was owing to the accidental mistake of the conductor of the east-bound train, — an independent circumstance.

3. The fact that there was no formal exception to the order overruling the motion for a new trial does not prevent the court from examining the evidence with a view to see what the facts are on which the instructions are predicated; and further, as the record purports to give the whole of the evi-

dence, whether the verdict is right or wrong; for this is necessary in order to determine whether the court should reverse for an erroneous instruction.   *Jamison* v. *Moon*, 43 Miss. 598.

4. The facts show that the return of the plaintiff to Corinth was voluntary, and that no force or threats were used.

*Whitfield & Young*, on the same side.

*Inge & Inge*, for the defendant in error.

1. Common carriers of passengers are required to exercise the highest degree of care.   They are liable for damages for injuries inflicted by the wilfulness or ignorance of their employés.   2 Am. Rep. 44; 38 Miss. 274; 12 Allen, 55; 17 N.Y. 369; 40 Miss. 395; 43 Miss. 186; 44 Miss. 466.

2. The jury are the sole judges of the credibility of witnesses, and their verdict will not be disturbed on the ground of alleged error in this respect.   *Lea* v. *Guice*, 13 S. & M. 656; *Storm* v. *Green*, 51 Miss. 110; *Watson* v. *Dickens*, 12 S. & M. 608; *Peck* v. *Thompson*, 23 Miss. 367; 42 Miss. 608.

3. Counsel then reviewed the facts at length, contending that the verdict was supported by the evidence.

*M. Green*, on the same side, cited *New Orleans Railroad* v. *Burke*, 53 Miss. 200; *Mangum* v. *Ball*, 43 Miss. 288; *Vicksburg & Meridian Railroad* v. *Ragsdale*, 51 Miss. 451; *Friar* v. *State*, 3 How. (Miss.) 422; *Scott* v. *State*, 31 Miss. 473; *Porter* v. *Duglass*, 27 Miss. 379, 392; arguing the various assignments of error, and contending that, as no exception was taken to the order overruling the motion for a new trial, the propriety of that action could not be considered.

CHALMERS, J., delivered the opinion of the court.

Could we pass upon the testimony contained in the bill of exceptions, we should say that the verdict was manifestly wrong, and the damages grossly excessive.   But no formal exception was taken in the court below to the action of the court in overruling the motion for new trial; and it was held in *Scott* v. *State*, 31 Miss. 473, that under such circumstances this court could not revise such action, although the overruling of the motion was followed by a bill of exceptions embodying all the testimony.   The statute, Hutch. Code, 885, art. 7, § 1, is substantially the same as § 648 of Code of 1871, and we

shall not depart from the construction adopted, though rigid. We may look at the testimony, however, in order to test the correctness of exceptions taken to the giving and refusing of instructions, and the admission of evidence. *Jamison* v. *Moon*, 43 Miss. 598.

The third instruction given for the plaintiff below was erroneous. It would have been correct if the passenger had in fact paid for his ticket; but payment in counterfeit money was no payment at all. That the ticket had been so paid for, though not knowingly, is perfectly manifest, if not admitted. The instruction was calculated to mislead the jury into believing that this circumstance did not change the rights of the parties. The railroad company was under no obligation to transport a man who, however innocently, had defrauded them in the purchase of his ticket, and would have had the right to eject him from the train had he refused to rectify the wrong.

The testimony with regard to the temporary detention of the hundred dollar bill was improperly admitted. There was no count in the declaration under which it was admissible. The only counts were, first, for a failure to transport to Memphis; second, for a forcible bringing back to Corinth. The accidental carrying of the hundred dollar bill beyond Corinth, and its consequent detention, if a wrong at all, was wholly independent of those complained of, and should have been made the subject of another count. "In trespass for taking a horse, nothing can be given in evidence which is not expressed in the declaration; and if money be paid over (*i.e.* to the party taking) in order to regain possession, such payment should be alleged as special damage." 1 Chitty Pl. 442. "Therefore, in trespass *quare clausum fregit*, the plaintiff would not, under the general allegation (*i.e.* of *alia enormia*), be permitted to give evidence of the defendant's taking away a horse," while committing the trespass. 1 Chitty Pl. 443. The principle is that a recovery cannot be had for an act which amounts of itself to an independent trespass, though connected with the one sued for, unless it is counted on in the declaration. To allow it would operate as a surprise upon the defendant.

The original demand for and taking of the $100 by the first conductor was, perhaps, a part of the history of the wrongs com-

plained of by the declaration, and so inseparably connected with it as to be admissible as part of the *res gestæ*. The carrying of it beyond Corinth by the second conductor was not, because all the wrongs complained of by the declaration ended with the arrival at Corinth.

*Judgment reversed and cause remanded.*