## WAY v. THE CHICAGO, ROCK ISLAND & PACIFIC R'Y Co.

1. **Railroads:** FRAUDULENT USE OF ANOTHER'S TICKET: COMPANY'S LIABILITY FOR NEGLIGENCE. Where the defendant had issued to one F. a commutation mileage ticket, upon which was printed the following, among other conditions: "This ticket is positively not transferable, and, if presented by any other than the person whose name appears inside of the cover, and whose signature is attached below, it is forfeited to the company," and the conditions were accepted by F., but the plaintiff's intestate procured the ticket, and was riding upon it on one of defendant's trains, leaving the conductor to whom he presented it to infer that he was F., *held* that the relation of passenger and carrier did not exist

between him and the defendant, and that the defendant was not bound, so far as he was concerned, to exercise that measure of diligence and care which the law requires of railroads towards those who are in good faith traveling upon their trains. (See authorities cited in opinion.) Such ticket was not an "instrument," assignable notwithstanding its terms, under section 2086 of the Code, nor could plaintiff profit by the claim that its issuance by the defendant was in violation of section 11, chapter 77, Laws of 1878, nor that the only right which the defendant could insist upon as against one fraudulently riding upon it was to declare it forfeited.

### Appeal from Mahaska Circuit Court.

### SATURDAY, JUNE 7.

THE plaintiff is the administrator of the estate of John Way, deceased. The action was brought by the decedent. After his death the present plaintiff was substituted. The plaintiff claims to recover for a personal injury alleged to have been received by the decedent as a passenger on one of defendant's trains, and by being thrown against a cupola platform, by defendant's negligence in making a coupling. There was a trial to a jury, and verdict and judgment were rendered for the plaintiff. The defendant appeals.

*M. A. Low*, for appellant.

*John F. Lacey*, for appellee.

ADAMS, J.—In April, 1881, the decedent took passage upon a freight train at Monroe, Jasper county, for Oskaloosa. In payment of his fare, he presented a mileage ticket, which had been issued to one R. G. Forgrave, at commutation rates. The conductor of the train, without knowledge that Way was not Forgrave, detached the coupons for his passage. Printed upon the ticket were several conditions, and also a printed acceptance of the conditions, which was signed by Forgrave, and the whole was denominated a contract. One of the conditions is in these words: "This ticket is positively not transferable, and, if presented by any other than the person

whose name appears on the inside of the cover, and whose
signature is attached below, it is forfeited to the company."
The defendant's theory upon the trial below was, that the
decedent was not a passenger within the meaning of the law,
and asked the court to instruct accordingly. This the court
refused to do, and gave an instruction in these words: "If
you find from the evidence that the decedent was injured to
the damage of his estate substantially as alleged, and that he
was at that time riding in a caboose in the defendant's train,
on the mileage ticket in evidence, issued by the defendant to
R. G. Forgrave, and that, upon its presentation in payment
for transportation, the conductor of the train accepted the
ticket, and recognized and treated the decedent as a passenger,
the defendant's duties and obligations were, and its liabilities
now are, the same as if the ticket had been issued to the de-
cedent, whether prior to the accident he disclosed to, or the
conductor knew, his identity or not."

In respect to the measure of care which common carriers
owe to passengers, the court gave an instruction as follows:
"Common carriers of persons are required to do all that
human care, vigilance and foresight can reasonably do, in
view of the character and mode of conveyance adopted, to
prevent accident to passengers. Not the utmost degree of
care which the human mind is capable of inventing, but the
highest degree of care and diligence which is reasonably
practicable under the circumstances, is what is required."

The giving of these instructions is assigned as error. The
defendant insists that the contract relied upon, as constituting
the relation of common carrier and passenger, was obtained
by imposition and virtual misrepresentation, and, it being now
repudiated by the company by a denial by it of its liability,
the plaintiff cannot be allowed to set it up as binding upon
the company; and that, if the relation of common carrier and
passenger did not exist, the company did not owe the decedent
the measure of care set forth in the instruction.

It appears to us that the defendant's position in this respect

is well taken. "When the decedent presented the ticket, we must presume that he intended to be understood as claiming that he had a right to travel upon it. This claim involved the claim that he was Forgrave, for the ticket showed upon its face that no one had a right to travel upon it but Forgrave. By the presentation of the ticket, the decedent falsely personated Forgrave, with the intention of deceiving the company; and he did deceive it, and to its injury, for, by reason of the deception, he escaped the payment of the full rate with which he was otherwise chargeable. "

It is not material, then, that the decedent obtained the conductor's consent. Whether his consent would have bound the company, if he had known that the decedent was not Forgrave, we need not inquire; it certainly did not under the circumstances shown. The only relation existing between the decedent and the company having been induced by fraud, he cannot be allowed to set up that relation against the company as a basis of recovery. He was, then, at the time of the injury, in the car, without the rights of a passenger, and without the right to be there at all. We do not say that it is necessary that a person should pay fare to be entitled to the rights of a passenger." It is sufficient, probably, if he has the consent of the company fairly obtained. But no one would claim that a mere trespasser has such rights; and it appears to us to be well settled that consent obtained by fraud is equally unavailing.

The plaintiff insists that the extraordinary care described in the instruction does not become due from common carriers by reason of any contract, but simply by a rule of law which enforces the duty upon broader grounds. It is not important to inquire precisely how the duty arises. "However it arises, the duty is one which the common carrier owes only to passengers, and if, as we hold, the decedent did not sustain that relation within the meaning of the law, the company did not owe that duty to him, and that is the end of the inquiry. "The doctrine which we announce was very clearly expressed in *T.*,

*W. & W. R. Co. v. Beggs*, 85 Ill., 80. In that case the court said: "Was defendant a passenger on that train in the true sense of that term? He was traveling on a free pass issued to one James Short, and not transferable, and passed himself as the person named in the pass. By his fraud he was riding on the car. Under such circumstances, the company could only be held liable for gross negligence, which would amount to willful injury." In Thompson on Carriers of Passengers, 43, section 3, the author goes even further. After stating the rule that the relation of carrier and passenger does not exist where one fraudulently obtains a free ride, he says: "This doctrine extends further, and includes the case of one who knowingly induces the conductor of a train to violate the regulations of the company, and disregard his obligations of fidelity to his employer." In *U. P. R'y Co. v. Nichols*, 8 Kan., 505, the defendant in error imposed himself upon the company as an express messenger, and obtained the consent of the conductor to carry him without fare. It was held that he did not become entitled to the rights of a passenger. The court, after quoting Shearman & Redfield's definition of a passenger, which is in these words: "A passenger is one who undertakes, with the consent of the carrier, to travel in the conveyance provided by the latter, other than in the service of the carrier as such," proceeds to say: "The consent obtained from the conductor, was the consent that an express messenger might ride without paying his fare. Such consent did not apply to the plaintiff," (the defendant in error.) See also the following cases: *T., W. & W. R. Co. v. Brooks*, 81 Ill., 292; *M. & C. R. Co. v. Chastine*, 54 Miss., 503; *Creed v. Penn. R. Co.*, 86 Penn. St., 139; *Relf v. Rupp*, 3 W. & S. 21; *Hayes v. Wells, Fargo & Co.*, 23 Cal., 185.

The plaintiff cites and relies upon *Bissell v. R. Co's*, 22 N. Y., 308; *Washburn v. Nashville, etc., R. Co.*, 3 Head, 638; *Jacobs v. St. Paul, etc., R. Co.*, 20 Minn., 125; *Penn. R. Co. v. Brooks*, 57 Pa. St., 346; *Wilton v.*

*Middlesex R. Co.*, 107 Mass., 108; *Flint, etc., R. Co. v. Weir*, 37 Mich., 111; *Dunn v. Grand Trunk R'y Co.*, 58 Me., 192; *Edgerton v. N. Y., etc., R. Co.*, 39 N. Y., 227; *Gregory v. Burlington, etc., R. Co.*, 10 Neb., 250; *Great Northern R'y Co. v. Harrison*, 10 Exch., 376. But none of these cases hold that the extraordinary care described in the instruction given is due to a person not a passenger, and none of them hold that the relation of passenger can be insisted upon, where the company shows affirmatively, as a defense, that the company's consent was obtained by fraud.

Certain special objections to the defense remain to be noticed. Sec. 2086 of the Code provides that " when by the terms of an instrument its assignment is prohibited, an assignment of it shall nevertheless be valid." The plaintiff cites this statute, and claims, as we understand, that the mere possession of the ticket by the decedent was *prima facie* evidence of an assignment to him, and that the assignment under the statute was valid, and, being such, it is immaterial whether the conductor supposed that the decedent was Forgrave or not.

Without undertaking to set forth all the answers which we think might be made to this position, we think it sufficient to say that we do not think that the word "instrument," as used in the statute, was designed to embrace railroad tickets like the one in question. The purpose of such a ticket is to serve as evidence of a contract to render the party to whom it is issued a personal service, to-wit, the transportation of himself and baggage, and no one else, over the route described. The language is: " On presentation of this ticket, with coupons and contract attached, Mr. R. G. Forgrave may travel," etc. While section 2085 treats of instruments whereby the maker acknowledges labor to be due another, and while a valid assignment may undoubtedly be made of such instruments under the statute, we cannot properly so construe the statute as to hold that the essential nature of the contract can be changed, so as to require the maker to do not only what he

did not agree to do, but what the other party expressly stipulated that the maker should not be required to do.   The case is not different from one where an individual or corporation should agree to transport certain specific freight, and no other.   No assignment could be made of the contract which would impose upon the maker the obligation to transport different freight.   It is said by the company that Forgrave was a commercial traveler, and that the company was interested in facilitating commercial travelers, and in developing commerce along its line; but it is not important to inquire how this is.   It is certain that we cannot go beyond the company's contract, so far as its essential nature is concerned.

Another statute relied upon is section 11, chapter 77, Laws of 1878.   The section is in these words:   No railroad corporation shall charge, demand or receive from any person   *   *   *   for the transportation of persons   *   *   *  ,   or for any other service, a greater sum than it shall, at the same time, charge, demand or receive from any other person   *   *   *   for a like service from the same place, or upon like conditions and under similar circumstances."   The plaintiff's position, as we understand it, is that the act of the company in commuting rates to Forgrave, though he might have belonged to a certain class, and though the company might have been interested in facilitating such class, was nevertheless a violation of law, and, being such, the acts of the decedent in gaining the advantage of the rates commuted to Forgrave, though done by imposition, were justifiable, and did not preclude him from insisting that he had the same rights that he would have had if he had paid full rates, or otherwise had obtained the consent of the company without fraud.

It is a sufficient answer to say that, if the company charged illegal rates, it was not done in charging Forgrave less, but some one else more; nor could the decedent properly obtain the rates made to Forgrave by personating Forgrave. Whether, if he had appeared in his own name, and demanded that the rates made to Forgrave should be made to him, and

the company had refused, he would have had a right to complain we need not determine, as we have no such case.

Another position taken by the plaintiff is that the ticket provides its own penalty for its violation, to-wit, a forfeiture, and that no other penalty can be added.

But the question before us is not as to the enforcement of a penalty by the company, but as to whether the decedent acquired the rights of a passenger. The right of the company to insist that he did not, if he never properly acquired the consent of the company to carry him as such, is independent of any question of penalty. We think that the instruction given by the court is erroneous, and that the judgment must be

REVERSED.