### GREAT NORTHERN RY. CO. v. BRUYERE.

(Circuit Court of Appeals, Eighth Circuit. March 24, 1902.)

No. 1,587.

1. RAILROADS—REMOVAL OF TRESPASSERS—PERSONAL INJURIES.
   Plaintiff boarded a caboose on defendant's freight train to make inquiries from the conductor concerning his wife, having expected her on that train, and while he was still in the caboose, and waiting for the conductor, the train started. When the conductor came, he demanded that plaintiff pay his fare or get off, but refused to stop the train. Plaintiff stepped out onto the platform, and the conductor locked the door, leaving him outside, and he was thrown from the train by the sudden lurching of the caboose, after having attempted to re-enter. *Held* wrongful conduct on the part of the conductor, for which the company was liable if it was the proximate cause of the injury.

2. SAME—PROXIMATE CAUSE OF INJURY—QUESTION FOR JURY.
   The question whether the wrongful conduct of the conductor was the proximate cause of the injury was for the jury.

   Sanborn, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of North Dakota.

W. E. Dodge (C. Wellington and C. J. Murphy, on the brief), for plaintiff in error.

James H. Bosard (R. H. Bosard, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This is a suit for personal injuries brought by Richard N. Bruyere, the defendant in error and the plaintiff below, against the Great Northern Railway Company, the plaintiff in error. The plaintiff below gave evidence tending to show the following facts, which, in view of the verdict below, must be regarded by this court as having been established to the satisfaction of the jury: That he resided about six miles from Larimore in North Dakota; that on the evening of August 8, 1898, he went to the station of the defendant company, in Larimore, with a view of meeting his wife, who had been at Grand Forks, and was expecting to return on defendant's freight train No. 15; that before that train arrived he heard that it had been taken possession of by a crowd of rioters, whom he termed "hoboes," at an intermediate station; that when the train arrived at Larimore he was on the platform of the station, expecting his wife, and that considerable excitement ensued, upon the arrival of the train, which attended the arrest of the rioters; that his wife did not get off the train, and, as he did not see the conductor, he went to the rear end of the train and boarded the caboose, with a view of interviewing the conductor and obtaining information concerning his wife; that, as the conductor was not in the caboose, he supposed that he was out making his report to the superintendent, and would return shortly, and that he accordingly remained in the caboose awaiting his return, and that while he was waiting the train started unexpectedly.

The plaintiff below further testified that when the train started he supposed it would stop very shortly at the coal shed to coal up, and that in the meantime he could see the conductor and inquire about his wife; that when the train reached the coal shed, which was not far from the station, it was going faster, and did not stop, and that the conductor came in about that time; that he explained to him why he was on the train, told him that he expected his wife was coming on that train, and that he was looking after her, and that he also inquired of the conductor if she had started from Grand Forks on the train; that the conductor told him that no lady had started on the train with him that night from Grand Forks, and then told the plaintiff that he must get off of the train; that at that time the train was going pretty fast, and that he told the conductor it was going too fast to get off with safety; that the conductor then said he must pay his fare; that he told the conductor there was no place he wanted to go to, and that he asked him to slack up; that the conductor replied that he would not do so, and told him he must get off; that he, the plaintiff, thereupon stepped outside of the door, to the rear platform, whereupon the conductor followed him and immediately closed the door and fastened it; that he first went to the left-hand side of the train and looked along the side thereof and could see the train bending as though going round a curve; that he then went back to the door and tried it and shook it, but that it was fastened, so that he could not get in; that he thereupon went to the right-hand side of the platform, and was going to sit down there, when the caboose lurched and threw him to the ground, injuring him seriously, where he lay unconscious until

near daylight, when he was revived by a shower and managed to get to a house which was about half a mile distant from the track. The plaintiff testified further, and in substance, on his cross-examination, that when the train started unexpectedly he intended to get off at the coal shed, where he supposed that the train would stop; that he didn't want to go anywhere as a passenger, his purpose being simply to see the conductor and obtain information about his wife; that the coal sheds were about half a mile from the station, and that when the train reached that point it was going pretty fast; that he wanted to get off there; that when the conductor demanded his fare he refused to pay it, telling him he didn't want to go anywhere; that he, in fact, wanted the conductor to stop the train; that when he went out on the platform he went there "to show the conductor that the train was going too fast for any man to get off safely"; and that the conductor followed him to the door, and, immediately after he had passed through it onto the platform, closed it and fastened it.

The trial court instructed the jury, in substance, that the plaintiff below was wrongfully upon the train, even though he boarded it for the purpose above stated; that he had no right to ride upon the train for the purpose of meeting the conductor and making inquiries about his wife; that he had no right to insist that the train should be stopped, after it had started, to let him off; and that it was his duty to have paid his fare when it was demanded and to have ridden until the train reached a regular station where he could get off. No exception could well be taken to this part of the charge by the defendant company, and none was taken. But the court proceeded to say:

"The plaintiff being wrongfully upon the train, the conductor had a perfect right, under the law, to remove him from the train, but in the exercise of that right he was charged with the duty not to unnecessarily expose the plaintiff to danger. The fact that the plaintiff was wrongfully upon the train would give the conductor no right either to injure him or expose him to danger. He, therefore, had no right to insist upon the plaintiff's leaving the train while it was in motion. His duty was either to stop the train and put the plaintiff off, if he decided that the plaintiff must leave the train, or to carry the plaintiff to the nearest station. This brings us to the issue of fact in the case upon which there is a conflict of evidence. Plaintiff says, in substance, that the conductor ordered him to leave the train, and that he stepped to the door for the purpose of pointing out that the train was going so fast that he could not leave it, and that the conductor shut the door, and locked it, thus fastening him out upon the platform. If you believe that is a true statement of the occurrence, the conduct of the conductor was wrongful, and if that wrongful conduct was the proximate cause of the plaintiff's injuries he is entitled to recover, unless he himself was guilty of contributory negligence, which I will presently explain to you more fully. Shutting the plaintiff out on the platform, if you find that he was shut out upon the platform, would be the proximate cause of plaintiff's injuries, if those injuries were the natural and probable result of that act, and such as a reasonable and prudent man would have foreseen as likely to result therefrom."

It is urged that error inheres in this portion of the charge, and the exception thereto raises the only question to be determined, namely, whether the act of the conductor in locking the door and compelling the plaintiff to ride on the platform, instead of on the inside of the

caboose, was a wrongful act, for which the defendant company can be held liable, assuming, as the lower court held, that the plaintiff was wrongfully on the train, and not entitled to the rights of a passenger.

In view of all the circumstances of the case, we entertain no doubt that the question last stated should be answered in the affirmative. It was obviously more dangerous to ride on the platform, where one standing or sitting was liable to be thrown off by the lurching of the car, than to ride on the inside. We may well take judicial notice of the fact that the platform of a car is not as safe a place to ride as the inside, because it is a common practice of railroad companies to place notices on the doors of their cars warning people not to ride on the platform because of the enhanced danger. Nor do we find any evidence in this record which furnishes a reasonable excuse for the conduct of the conductor in locking the plaintiff out on the platform and compelling him to ride there and incur the unnecessary risk of being thrown off. He had boarded the train for a laudable purpose, and it had started unexpectedly, and had not stopped at the coal sheds, where he supposed it would stop, according to the usual custom. Moreover, the car, on the inside, does not seem to have been overcrowded, and the plaintiff was making no unseemly noise or disturbance to annoy other passengers in the caboose, if there were any. The fact, therefore, that he refused to pay his fare, did not warrant the conductor in locking him out on the platform, when the train was going at such speed that the plaintiff did not dare to jump off. The conductor's action in that matter must be pronounced wrongful and wanton, in that, without any sufficient cause or excuse, he willfully exposed the plaintiff to unnecessary danger.

The charge of the lower court is further criticised because it permitted the jury to determine, as a question of fact, whether the wrongful act of the conductor in locking the plaintiff out on the platform was the proximate cause of the injury, but in view of the plaintiff's own testimony, showing his attempt to get on the inside of the car after the locking of the door, and how he happened to be thrown off by the lurching of the car, we do not well see how the lower court could have acted differently. The question of proximate cause is usually one for the jury, as it certainly was in this case. Railway Co. v. Yeargin, 48 C. C. A. 497, 109 Fed. 436, 439; Railway Co. v. Kellogg, 94 U. S. 469, 474, 24 L. Ed. 256.

The question whether the plaintiff, after he was locked out on the platform, conducted himself as a prudent man should have done in his situation, or contributed to his own hurt by a want of ordinary care, was also submitted to the jury under proper instructions, and was decided adversely to the defendant company.

We find no error in the record, and the judgment below is accordingly affirmed.

SANBORN, Circuit Judge. I dissent in this case, because, in my opinion, the closing and locking of the door of a moving car against a trespasser upon the platform is not, as a matter of law, conclusive

evidence of a willful or reckless intent to injure him, and this was the legal effect of the charge of the court below. It charged the jury that the act of the conductor in closing and fastening the door was a wrongful act, and that if this act was the proximate cause of the injury the company was liable for it. This charge took from the jury the question whether or not this act evidenced a willful or reckless intent to injure the plaintiff, and prevented their consideration of this question. The plaintiff was a trespasser upon the train. The only duty of the company or of the conductor of the train to him was to abstain from wanton or reckless injury to him. Purple v. Railroad Co. (C. C. A.) 114 Fed. 123; Condran v. Railroad Co., 67 Fed. 522, 523, 14 C. C. A. 506, 508; McVeety v. Railway Co., 45 Minn. 269, 47 N. W. 809, 11 L. R. A. 174, 22 Am. St. Rep. 728; Way v. Railroad Co., 64 Iowa, 48, 19 N. W. 828, 52 Am. Rep. 431. In Trumbull v. Erickson, 97 Fed. 891, 893, 38 C. C. A. 536, 538, this court held that it was not, as a matter of law, conclusive evidence of even ordinary negligence for a passenger to ride upon the platform of a moving car when he could have occupied standing room within the car. If it is not conclusive evidence of ordinary negligence for one to ride upon the platform of a moving car, it cannot be conclusive evidence of a willful or reckless intent to injure a tramp or a trespasser to close the doors of the car against him when he is riding upon its platform. It may be that such an act under some circumstances would be evidence from which a jury might infer a malicious or reckless intent to injure, but I cannot persuade myself that it is conclusive evidence of such an intent, because it does not seem to me doubtful that all reasonable men would not agree that such an act indicates any willful or reckless intent on the part of the conductor who closes the door to injure the trespasser, and this is the test by which the question should be answered. Speer v. Board, 88 Fed. 749, 754, 32 C. C. A. 101, 107; Railroad Co. v. Jarvi, 53 Fed. 65, 70, 3 C. C. A. 433, 438. For this reason I think the judgment below should be reversed, and a new trial should be granted.