BEARD v. INTERNATIONAL & G. N. RY. CO. (No. 1348.)

(Court of Civil Appeals of Texas. Texarkana. Dec. 4, 1914. Rehearing Denied Dec. 17, 1914.)

1. TRIAL (§ 252*)—REQUESTED INSTRUCTIONS—APPLICABILITY TO EVIDENCE.

Where an agent in charge of a car of bananas traveled on a nontransferable pass, issued to his principal, to a junction point, with the consent of the conductor of the branch train, and was there injured while the car was being coupled onto a train on the main line, a requested charge that if the agent presented the pass believing he had a right to ride thereon, and it was accepted by the conductor knowing that he was the agent of the person named therein, the agent was a passenger, was not applicable to the evidence, since the conductor of the train on which he was injured had not consented to his riding.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

2. CARRIERS (§ 244*)—CARRIAGE OF PASSENGERS—ACQUIESCENCE OF CONDUCTOR.

One who took charge of a car of bananas as the agent of another, and attempted to travel along with the car on a nontransferable pass issued to his principal, not believing that he had a right to ride thereon, but only that the train employés would permit him to do so, is not a passenger toward whom the law owes a high degree of care, but at most a licensee, since the railroad company cannot be bound by the acts of its conductors in accepting persons for passage when done in violation of law or of the known rules of the company.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1115, 1116; Dec. Dig. § 244.*]

3. CARRIERS (§ 246*)—CARRIAGE OF PASSENGERS—BURDEN OF PROOF—EXISTENCE OF RELATION.

One who attempts to ride on a nontransferable pass issued to another has the burden of showing that he was accepted by the carrier as a passenger.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1275, 1284, 1296; Dec. Dig. § 246.*]

4. APPEAL AND ERROR (§ 1064*)—HARMLESS ERROR — INSTRUCTIONS — UNNECESSARY INSTRUCTIONS.

Where a person, injured while accompanying a car of fruit, was a licensee, not a passenger, because traveling on a nontransferable pass issued to another, an instruction that he was not a passenger because he had the car stopped at a place not authorized by the bill of lading, while unnecessary, was not prejudicial to plaintiff.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. § 1064.*]

5. TRIAL (§ 252*) — INSTRUCTIONS — APPLICABILITY TO EVIDENCE.

In an action for injuries received by a licensee while in a railroad car, an instruction that the plaintiff could not recover for any defect in the brake was proper, where there was evidence that the brake was defective, but no evidence that there was any attempt to use the brake, since the defect could not have been the proximate cause of the injury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

6. TRIAL (§ 260*)—REQUESTED INSTRUCTIONS—REPETITION.

The court should not give a special charge embodying the same instructions that were previously given in the main charge.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

7. APPEAL AND ERROR (§ 499*)—PRESENTING QUESTIONS IN LOWER COURT—OBJECTIONS TO CHARGE.

A bill of exceptions to the giving of a special charge should show that the particular objection urged on appeal was called to the attention of the trial court as required by Rev. St. 1911, art. 1971, as amended by Acts 33d Leg. c. 59 (Vernon's Sayles' Ann. Civ. St. 1914, art. 1971), although the language of that article mentions only the general charge.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2295–2298; Dec. Dig. § 499.*]

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Appeal from District Court, Rusk County; W. C. Buford, Judge.

Action by John A. Beard against the International & Great Northern Railway Company. Judgment for defendant and plaintiff appeals. Affirmed.

Beard & Davidson, of Marshall, and J. Y. Gray, of Henderson, for appellant. Wilson, Dabney & King, of Houston, and Morris & Sims, of Palestine, for appellee.

HODGES, J. This is an action by the appellant to recover damages for personal injuries.

On October 31, 1911, H. M. Turner shipped over the appellee's road from Galveston a car load of bananas consigned to himself at Longview, Tex. The bill of lading contained the following notation:

"Mr. H. M. Turner, as a messenger in charge of the following cars loaded with bananas: R. D. 9174; and is entitled to accompany any one or all of these cars, to waybilled or to substitute destination in case of reconsignment. He has been furnished with return transportation over the International & Great Northern, Missouri Pacific ...... Railroads, and no additional return transportation should be furnished over those lines, but return transportation should be furnished over all other lines interested in the going movement. H. M. Turner holds I. & G. N. local ticket No. 216, Longview to Galveston."

Across the face of the bill of lading was stamped the words, "Copy—Not Negotiable." The waybill contained the same notation, and also showed that the privilege of stopping and partially unloading at Henderson, Tex., was allowed. After the arrival of the car at Henderson it was stopped about two days, during which time a portion of the fruit was unloaded. Turner, desirous of sending the car on to Longview, employed the appellant, Beard, to accompany it in his stead. In order to reach Longview the car had to be transported over a branch road to Overton, there to connect with the main line of the International & Great Northern Railway. A delay at Overton of several hours occurred by reason of the schedule of the railway company. When this car reached Overton it was placed upon what was called the "house track" to await the next freight going north. According to the testimony of the appellant, he then opened the doors, and proceeded to sell the fruit, and did sell a quantity of it before the arrival of the freight train that was to carry him on to Longview. When this train came, the engine was detached, coupled to the fruit car, and pulled it north a short distance beyond the depot. The car was then released from the engine and permitted to roll down toward a number of other cars, with which it collided. Appellant remained in the fruit car during this time, and the collision, he says, was so violent that it threw him against the end of the car, and inflicted the injuries of which he complains. Appellant testified that,

before he left Henderson, Turner delivered him the bill of lading containing the transportation issued to him, Turner, and directed appellant to use it. He exhibited this to the conductor on the branch road from Henderson to Overton, and it was accepted. He testified that this conductor knew both him and Turner; but it is undisputed that the conductor on the main line, where the injury occurred, did not know him.

The court, in effect, instructed the jury that the appellant was not a passenger, but a licensee, and that he was entitled to the exercise of ordinary care on the part of the railway employés for his protection, that if he was injured as alleged by the negligence of such employés, to return a verdict in his favor, unless the appellant was guilty of contributory negligence. The jury returned a verdict in favor of the railway company.

Among other instructions, the court gave the following:

"The written contract introduced in evidence between the railway company and H. M. Turner shows that the said H. M. Turner was permitted under the terms of his contract to have transportation along with said car of bananas from Galveston to Longview with stop-over privileges at Henderson, but that said transportation was not transferable, and as a matter of law the plaintiff, John A. Beard, could not legally and lawfully ride upon said transportation.

"In the waybill and other papers offered in evidence, it appears that Henderson was the only place at which a stop-over privilege was allowed under the contract. The contract, however, provides that other points may be substituted and other points agreed to by said Turner paying some additional amount and complying with certain other requirements under the contract; but this appears not to have been done; so as a matter of law the plaintiff had no legal right to be transported under this contract, nor had the plaintiff the legal right to have the car of bananas stopped at Overton and placed upon the side track and to make sales from said car. Therefore the relation of carrier and passenger did not and could not, under this contract, exist between the parties.

"However, if you find from the testimony that H. M. Turner had control and possession, under this contract which has been offered you in evidence, of the car of bananas with stop-over privileges at Henderson, and that the plaintiff, John A. Beard, was employed by the said Turner to aid and assist him in selling fruit from said car, and in managing the business and caring for the fruit, and that the railway company knew said fact and permitted the plaintiff, John A. Beard, with such knowledge and consent, to ride in said car and care for said fruit and to sell the same at Overton, and transported him from Overton to Longview without demand of further compensation, then you are instructed that the plaintiff, John A. Beard, would be what in law is called a licensee; that is, although he had no legal right to demand said privileges to sell said fruit from said car, still if the company, by its agents or servants, with knowledge of these facts, permitted him to ride in said car and sell fruit from the same, and be transported over the road, he would not be a trespasser, but would be what is called a licensee."

The objection to these charges is that they assumed as a matter of law that Beard was a mere licensee, and not a passenger, and therefore was not entitled to that high de-

gree of care which common carriers owe to their passengers.

[1] In a special charge requested and refused, the appellant urges the proposition that if Beard presented the transportation to the conductor believing that he was thereby entitled to ride upon the train of the defendant, and the conductor accepted the transportation and permitted Beard to ride upon the train, knowing that he was the agent of Turner, to care for the fruit, then Beard was a passenger and entitled to the high degree of care which the law accords to passengers. Such an instruction could only be applicable to the conditions under which appellant traveled from Henderson to Overton; for it is not contended that the conductor on the main line saw the pass, or knew the identity of the appellant, or that he was not Turner. In their brief, counsel for the appellant quote the following from the testimony of the conductor:

"I did not tell him to get out of the car. I knew he was there when we started the car * * * to couple into it. * * * I did not take up his ticket. I did not ask him anything more about any ticket, or anything, or any transportation. * * * I asked him if he was in charge of that car of stuff; I saw a notation on the waybill that there was a man in charge; of course I did not know who it was; I did not recognize the name."

[2] The question is, Was appellant entitled to an instruction telling the jury that he was a passenger, or one submitting that issue to the jury, to be determined by his good faith in believing that he had a right to use the transportation issued to Turner? Assuming that a charge instructing the jury that negligence in this instance was the failure to exercise the highest degree of care for the appellant's safety, instead of making ordinary care the test, might have led to a different verdict, still we do not think there is here presented any error of which the appellant could complain. One who boards a car with the intention of using transportation which does not entitle him to passage cannot claim to be a passenger, in the legal sense, till after he has been accepted as such. Way v. Ry. Co., 64 Iowa, 48, 19 N. W. 828, 52 Am. Rep. 431; Ry. Co. v. Beggs, 85 Ill. 80, 28 Am. Rep. 613; Ry. Co. v. Headland, 18 Colo. 477, 33 Pac. 185, 20 L. R. A. 822. According to appellant's own testimony, he had ridden from Henderson on the pass issued to Turner, and expected to continue his journey on the same transportation. The injury occurred before the train left Overton, and even before the car in which he was riding had been incorporated into the train. The conductor, who did not know Beard, saw from the waybill that Turner was permitted to accompany the car as the caretaker. He asked Beard if he was the man in charge of the car, and naturally assumed that he was the man designated in the waybill. The only legitimate inference is that Beard was allowed to remain in the car be-

cause he had failed to make known his identity. But the appellant contends that he would be entitled to be treated as a passenger if he in good faith entered the car believing that he had a right to be carried on that transportation. That might be true if there was any ground for such a belief in the evidence. Appellant does not say in his testimony that he entertained any such belief; neither does he say that he intended, in the event the pass was not honored, to pay his fare. Upon its face the pass gave notice that it was good only in the hands of Turner, and there is nothing to indicate that the appellant did not fully understand that fact. He may have believed that the conductor would carry him notwithstanding he was not entitled to use the pass, or that he would accept him with the impression that it was Turner who was presenting the transportation. But such conduct would not give him the status of a passenger, because Beard knew the conductor would have no right to make such a substitution. Article 1533, Pen. Code 1911, excepts from the general prohibition against free transportation by railways "the necessary caretakers" accompanying shipments of "live stock, poultry, fruit, melons, or other perishable produce." The proper railway officers had in this instance designated the individual who should accompany this car of fruit, and the appellant must have known that a freight conductor had no authority to substitute another person for the one named, or to carry still another caretaker. The railway company cannot be bound by the unauthorized acts of its conductors in accepting persons for passage when done in violation of the law or known rules. T. & P. Ry. Co. v. Black, 87 Tex. 160, 27 S. W. 118.

[3] Under the circumstances attending this injury the burden was upon Beard to prove that he was entitled to be treated as a passenger. But he shows no facts which justify an inference that he was knowingly permitted to use transportation to which he was not entitled, or that he intended in any event to pay his fare to Longview.

In the case of S. P. Co. v. Schuyler, 227 U. S. 601, 33 Sup. Ct. 277, 57 L. Ed. 662, 43 L. R. A. (N. S.) 901, it was held that the fact that an interstate passenger was being transported free in violation of the act of Congress did not exonerate the railway company from liability for negligence. An examination of the facts in that case shows that the free transportation being used by the deceased was such that both the railway company and the deceased might have believed in good faith that it came within the exceptions provided. But the question there was, Did the deceased occupy the status of a trespasser, by which he forfeited the right to even ordinary care? Justice Pitney, in rendering the opinion of the court, says, that the right to safe carriage "arose from the

fact that he was a human being of whose safety the plaintiff in error had undertaken the charge." The judgment affirmed that of the Supreme Court of Utah, where the case was discussed at considerable length. In concluding the opinion, Chief Justice Straup of that state used the following language:

"A mere intruder or trespasser, of course, cannot create the relation of carrier and passenger by his own act. Nor can one create such relation by fraudulently or deceitfully making an unauthorized use of a commission, pass, ticket, or the like, nor by likewise gaining his presence on the train by fraud or deceit, or through collusion or connivance with mere train crews." Schuyler v. S. P. Co., 37 Utah, 581, 611, 109 Pac. 458, 470.

[4] In this case, the bill of lading provided for only one stop-over privilege. That had been exhausted by the stop at Henderson, and Beard had no legal right to open the car and sell fruit therefrom at Overton. We fail to see how the charge upon that feature of the case operated to the injury of the appellant, although not necessary to the proper determination of the real issues involved.

[5] At the instance of the appellee the court gave the following charge:

"You are instructed that the plaintiff in this case cannot recover on account of any defect in the brake or brake-rigging by which the car could have been controlled; and if you find from the evidence that on account of a defective brake or brake-rigging the car was caused to bump into another car, and that he was thus injured, then it will be your duty to return a verdict for the defendant."

According to Beard's testimony the car in which he was riding at the time of the injury was equipped with a defective hand brake. He admitted that he knew of that defective condition of the car before it left Henderson, and knew that it still existed when he remained in the car at Overton. There is no evidence that this defect caused the injury, further than Beard's testimony concerning the statement of a brakeman at Overton. Beard testified that after the collision which caused his injuries, he got out of the car and inquired what was the matter, and a brakeman told him that the brakes on the car would not hold anything. There is no testimony that any attempt was made to use those brakes for the purpose of holding the car on that occasion. Beard testified that the car was pulled north and turned loose from the engine, and that it then rolled down towards the others, with which it collided. Even if this charge stated an incorrect proposition of law, the error, if any, was harmless because of the insufficiency of the facts to justify a finding that the defective equipment of the car was the proximate cause of the collision.

[6] Appellant also complains of the charge of the court on the issue of contributory negligence. It is contended, in the first place, that the facts do not raise that issue;

and in the second, that the special charge was but a repetition of what the jury had already been told in the main charge, and that it placed undue emphasis upon the issue of contributory negligence. It is true the court should not have embodied the same instructions in a special charge which had previously been given in the main charge, but we do not think, under the facts of this case, that the error operated to the prejudice of the appellant.

[7] Moreover, the bill of exception reserved to the giving of this special charge does not comply with the provisions of article 1971, Rev. St. 1911, as amended by the acts of 1913. See Acts 1913, p. 113. The bill should show that the particular objection here urged was called to the attention of the court before the charge was read to the jury. The parties are restricted on appeal to the objections there made. It is true that the language of the article referred to mentions only the general charge as the one to be objected to under such conditions, but the spirit of the law would apply the same rule to special charges which are given at the instance of one of the parties. See Ry. Co. v. Wadsack, 166 S. W. 42.

The testimony as to the circumstances under which the injury occurred is conflicting. That offered by the appellant tended to show that the car was detached from the engine and permitted to violently collide with other cars. That offered by the appellee tended to show that there was no such collision, that the car moved slowly and gently down to the other cars, and the coupling made without any unusual jar. There was also testimony from which the jury might have found that the appellant was injured at Henderson before he reached Overton.

We find no error which justifies the reversal of the judgment, and it is accordingly affirmed.